Edgar F. LINGO, Plaintiff,

v.

**GREAT LAKES DREDGE & DOCK CO. et alia, Defendants.**

No. CV–85–2789.

United States District Court, E.D. New York.

March 26, 1986.

Dickstein, Shapiro & Morin, New York City, for plaintiff.

Ahmuty, Demens & McManus, Garden City, N.Y., for defendant Babcock & Wilcox Co.

Anderson, Russell, Kill & Olick, New York City, for defendants Owens Corning Fiberglass Corp., Eagle-Picher Industries, The Celotex Corp., Keene Corp. and Pittsburgh-Corning Corp.

Barry, McTiernan & Moore, New York City, for defendant John Crane-Houdaille.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendant Environmental Protection of City of New York.

Glemming, Zulack & Williamson, New York City, for defendant GAF Corp.

Kirlin, Campbell & Keating, New York City, for defendant Farrell Lines, Inc.

Morgan, Melhuish, Monaghan, Meyer, Arvidson, Abrutyn & Lisobwski, New York

City, for defendant Raymark Industries, Inc.

O'Brien, McGarry, Murtagh & Mary, Rockville Centre, N.Y., for defendant Great Lakes Dredge & Dock Co.

Bigham, Englar, Jones & Houston, Herzfeld & Rubin, P.C., Joseph Donat, New York City, for Mobil Oil.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for U.S.

Heidell, Pitton, Murphy, Bach, P.C., New York City, for defendant Anchor Packing Co.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Plaintiff in this personal injury action alleges that he contracted an asbestos-related disease while employed at sea as a marine engineer. The defendants in this case include eleven asbestos manufacturers or suppliers and seven owners of vessels upon which plaintiff sailed. This matter is now before the Court on the defendant asbestos manufacturers' motions pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure to dismiss the complaint as against them for lack of subject matter jurisdiction.

The complaint asserts the following jurisdictional bases: diversity of citizenship; federal question; the Jones Act, 46 U.S.C. § 688; the Suits in Admiralty Act, 46 U.S.C. § 742; and the general maritime law of the United States. The defendant manufacturers had previously moved to dismiss the complaint for lack of subject matter jurisdiction. At oral argument before Judge Weinstein on January 10, 1986, plaintiff conceded that none of the complaint's jurisdictional allegations were sufficient as against the manufacturing defendants. However, Judge Weinstein deemed the complaint amended to allege admiralty jurisdiction. At oral argument defendants contended that even the complaint as amended lacked subject matter jurisdiction, *citing Keene Corp. v. United States,* 700 F.2d 836 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Judge Weinstein stated that *Keene* was "clearly distinguishable" from the present case since *Keene* involved a shipyard fabrication worker while the present case involves a seaman. Judge Weinstein provided the defendants an opportunity to brief the matter for argument before him. Subsequently, upon application made by defendant GAF Corporation this case was reassigned to this Court. Defendants have now renewed their motion to dismiss.

In *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court held that there is admiralty jurisdiction over tort claims only when the alleged injury occurs on navigable waters and if the wrong bears "a significant relationship to traditional maritime activity." *Id.* at 268, 93 S.Ct. at 504. This two-pronged test, maritime locality plus a nexus to maritime activity, applies to all tort claims alleged to be within admiralty jurisdiction. *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 673–74, 102 S.Ct. 2654, 2657–58, 73 L.Ed.2d 300 (1982).

Since the Supreme Court's decision in *Executive Jet* and *Foremost,* six circuit courts of appeal, including the Second Circuit, have unanimously held that admiralty jurisdiction does not extend to asbestos-related claims by shipyard workers because the claims bear no significant relationship to traditional maritime activities. *See Keene Corp., supra* at 844–45, *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Austin v. Unarco Industries, Inc.,* 705 F.2d 1, 12–13 (1st Cir.), *cert. pet. dismissed,* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983); *Oman v. Johns-Manville Corp.,* 764 F.2d 224, 230 (4th Cir.1985) *(en banc), cert. denied,* — U.S. —, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985); *Lowe v. Ingalls Ship Building,* 723 F.2d 1173, 1190 (5th Cir.1984); *Woessner v. Johns-Manville Sales Corp.,* 757 F.2d 634, 649 (5th Cir.1985); *Owens-Illinois, Inc. v. U.S. District Court,* 698 F.2d 967, 970–71 (9th Cir.1983); *Myhran v. Johns-Manville Corp.,* 741 F.2d 1119, 1122–23 (9th Cir.1984); *Harville v. Johns-Manville Products Corp.,* 731 F.2d 775, 781 (11th Cir.1984).

This Court has similarly ruled that there is no admiralty jurisdiction over asbestos-related claims of shipyard workers, even assuming the satisfaction of the maritime locality prong of the *Executive Jet* test because these claims do not have the requisite significant relationship to traditional maritime activity. *In re Eastern District of New York Asbestos Litigation*, MF–1 (E.D.N.Y. Oct. 13, 1983).

Plaintiff correctly notes that, as a seaman and not a shipyard worker, his case is different from the cases cited above.[1] In fact, had this case been brought in another circuit, this Court has little doubt that this difference would be a critical distinction compelling the conclusion that admiralty jurisdiction exists for plaintiff's claim. In *Austin, supra,* for example, the First Circuit focused on the plaintiff's activity in determining whether the complaint had the significant nexus to traditional maritime activity required. Thus, the First Circuit concluded that "personal injuries to seamen and others doing seamen's work do fall within the traditional concerns of admiralty law and are claims over which admiralty tort jurisdiction would be proper." 705 F.2d at 11. The *Austin* court based its decision denying admiralty jurisdiction to shipyard workers on the conclusion that the shipyard workers' activities were not sufficiently analagous to seamen's activities. Here, since plaintiff allegedly was a seaman injured while at sea, the *Austin* court's analysis clearly suggests that admiralty jurisdiction is proper for his claim.[2]

---

1. *But see* the recent case *Petersen v. Chesapeake & Ohio Ry. Co.,* 784 F.2d 732 (6th Cir.1986), in which the court concluded that the complaint of a machinist who worked on railways' car ferries, repairing equipment while ferries were sailing on the Great Lakes, was insufficient to invoke admiralty jurisdiction.

2. Other courts assessing the substantiality of the relationship between the alleged wrong and traditional maritime activity have referred to the four analytical factors first enumerated in *Kelly v. Smith,* 485 F.2d 520 (5th Cir.1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558. These four factors are "the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and type of injury; and traditional concepts of the role of admiralty law." 485 F.2d at 525. In the present case the fact that plaintiff was a ship-board crew member weighs in favor of admiralty jurisdiction while the fact that the defendant manufacturers are land-based and not uniquely tied to the maritime industry weighs against admiralty jurisdiction. Similarly, the fact that plaintiff's injuries allegedly occurred aboard ocean-going vessels is balanced by the fact that the instrumentality involved, asbestos, has no uniquely maritime character. It is, however, the third and fourth aspect of the *Kelly* criteria that would, under this analysis, lead to the conclusion that admiralty jurisdiction does lie in the present case. In contrast to the shipyard cases where plaintiff's exposure to asbestos is indistinguishable from that received by persons in land-based settings, *see, e.g., Owens-Illinois,* 698 F.2d at 971, plaintiff has alleged a special kind of degree of exposure due to his presence aboard ships:

"These engines are unique to marine propulsion systems and require a specialized skill to operate, maintain and repair. The steam engine's two boilers supply steam to the propulsion system's pistons or turbines through a piping system. As such, the very nature of the engine requires a tremendous amount of insulation throughout the engine rooms and fire rooms. Moreover, the nature of the ship requires that the intricate piping and insulation be confined to the engine rooms and fire rooms. Also, the tremendous heat generated requires an extremely powerful forced ventilation system to cool the ambient air temperature, which could reach 130 degrees in the summer months. The powerful forced draft caused the fibers of the asbestos insulation from the heavily concentrated piping and engine systems to circulate in the engine rooms and fire rooms, and be inhaled by me while performing my maritime duties at sea.... "While running the ships in inclement weather, the ships would be caused to violently roll from port to starboard and pitch from bow to stern, which in turn created a unique stress on the marine engines, piping and asbestos insulation that is not found in a land-based stationary setting. The resulting vibrations would cause the asbestos pipe covering and other asbestos insulation to deteriorate and flake off into the air in the engine rooms and fire rooms, where it was inhaled by me while in the performance of my maritime duties at sea."

Plaintiff's Affidavit in Opposition to Defendants' Motion, pp. 1–2. Finally, as discussed above, "personal injuries to seamen ... do fall within the traditional concerns of admiralty law." *Austin,* 705 F.2d at 11. *See also Kelly,* 485 F.2d at 526, where the court noted that "[a]dmiralty has traditionally been concerned with furnishing remedies for those injured while travelling navigable waters."

In contrast, however, the Second Circuit in *Keene* focused not on the injured individual's activities, but rather on the defendants' activities. *Keene* involved a suit for indemnity and contribution brought by an asbestos manufacturer against the United States Government for, *inter alia,* designing and specifying asbestos insulation products and failing to inspect the workplace. Although *Keene* clearly presented a quite different case from the present one, its broad language suggests that the Second Circuit would not find the wrongs alleged in the present case sufficiently related to traditional maritime activity. The *Keene* court found two elements critical to its determination:

> "First, *Keene* does not allege that its insulation was designed specifically for maritime use. Indeed, it appears from the complaint that it was used in a variety of land-based plants and refineries. Second, many of the roles attributed to the government and allegedly giving rise to Keene's cause of action—the government's sale of asbestos to Keene, its specification of asbestos as a component of insulation it purchased from Keene, its alleged breach of its duty to inspect the workplace, its obligations as a promulgator of health regulations—do not bear a significant relationship to the traditional maritime activities such as 'navigation and commerce.'"

*Keene, supra,* 700 F.2d at 844.

This apparent requirement that there be some independent connection between the asbestos product and traditional maritime activity has been criticized by other circuits on the ground that in other contexts courts have extended admiralty jurisdiction to manufacturers regardless of their intent or knowledge that their product would be used on a ship. *See, e.g., Austin,* 705 F.2d at 9; *Woessner,* 757 F.2d at 640. Thus, in *Sperry Rand Corp. v. RCA,* 618 F.2d 319 (5th Cir.1980), the Fifth Circuit held that an action for indemnity or contribution could be brought in admiralty against a manufacturer whose products were implicated in a grounding of a vessel and a collision upon navigable waters even though the products were manufactured on land and were not designed specifically for maritime use. However, in *Keene,* the Second Circuit expressly declined to follow the reasoning in *Sperry. Keene, supra,* 700 F.2d at 844–45.

In the present case plaintiff does not allege that any of the manufacturers supplied products of a distinctly maritime nature. Given the explicit rejection of *Sperry* by the Second Circuit in *Keene,* this Court is compelled to conclude that it does not have admiralty jurisdiction over the present case.

■ This is not the end of the inquiry, however. Defendant Great Lakes Dredge & Dock Co., a shipping company, opposes the motions to dismiss on the ground that this Court should assert pendent jurisdiction over the manufacturer defendants. In *dicta,* the Supreme Court in *Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976), has strongly suggested that joinder of a pendent party might well be proper in cases of which the federal court has exclusive jurisdiction since only in a federal court may all of the claims be tried together. *See also National Resources Trading, Inc. v. Trans Freight Lines,* 766 F.2d 65, 68 (2d Cir. 1985).

In *Aldinger,* the Court also instructed district courts to pay "careful attention to the relevant statutory language." *Id.* 427 U.S. at 17, 96 S.Ct. at 2421. In order to exercise pendent party jurisdiction, "a federal court must satisfy itself not only that Article III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated the existence." *Id.* at 18, 96 S.Ct. at 2422. *See, e.g., In re Investors Funding Co.,* 523 F.Supp. 550, 561–62 (S.D.N.Y.1980). In the present case, plaintiff asserts three bases for jurisdiction over the shipper/employer defendants, the Jones Act, the Suits in Admiralty Act, and admiralty jurisdiction. While the Jones Act and the Suits in Admiralty Act arguably do not lend themselves to a finding of congressional permission to assert state law claims against non-diverse

defendants as pendent parties, *see, e.g., Wood v. Standard Products Co.,* 456 F.Supp. 1098, 1100 (E.D.Va.1978), section 1333 of title 28, United States Code, clearly does. *See National Resources Trading, supra,* 766 F.2d at 68.

"We note, preliminarily, that the complaint invokes only admiralty jurisdiction, unavailable with respect to National Resource's claim against Maher by virtue of this court's decision in *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 808 (2d Cir.1971), which held that a shipper's claim against a terminal operator for loss of cargo is not within the federal maritime jurisdiction, but is a state claim governed by state law. In that same case, however, the court noted that pleadings in admiralty have traditionally been read with liberality, and went on to invoke pendent jurisdiction over the shipper's claim against the terminal operator, even in the absence of an allegation of such jurisdiction in the complaint. [*Id.*] at 809–11. Giving due regard to considerations of judicial economy, we conclude that it was within the court's discretion to exercise its power to hear the claim against Maher under the doctrine of pendent jurisdiction. The claim is pendent to the admiralty claim against the carrier, which has been settled, and *Aldinger v. Howard,* 427 U.S. 1 [96 S.Ct. 2413, 49 L.Ed.2d 276] (1976), has not foreclosed pendent party jurisdiction at least in circumstances where jurisdiction over the federal claim is exclusive."

Plaintiff's claims against both the defendant shipping companies and the defendant manufacturing companies derive from a common nucleus of operative facts, that is, the alleged exposure of a seaman to an allegedly defective products that was designed, manufactured, and sold by one group of defendants and installed on vessels owned and/or operated by another group of defendants. Accordingly, it is appropriate for this Court to exercise pen-

---

**3.** Defendant Mobil Oil Corp. has "cross-moved" pursuant to Rule 15 to amend its cross-claims to designate that its cross-claims against the manufacturing defendants are admiralty claims pur-

---

dent party jurisdiction under these circumstances. Defendants' motions are denied.[3]

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

suant to Rules 9(h) and 14(c). However, since this Court has concluded that admiralty jurisdiction does not lie against the manufacturing defendants, Mobil's motion is denied.