ANNA C. SWOGGER, as Executrix of DAVID D. SWOGGER, Deceased, Plaintiff, v WATERMAN STEAMSHIP CORP. et al., Defendants.

SEA-LAND SERVICE, INC., Third-Party Plaintiff-Respondent, v JOHNS-MANVILLE CORPORATION et al., Third-Party Defendants, and ARMSTRONG WORLD INDUSTRIES, INC., et al., Third-Party Defendants-Appellants.

First Department, October 3, 1989

## APPEARANCES OF COUNSEL

*Stephen K. Carr* of counsel *(Richard A. Menchini* with him on the brief; *Haight, Gardner, Poor & Havens,* attorneys), for third-party plaintiff-respondent.

*Steven Cooper* of counsel *(John H. Kazanjian, Peter B. Friedman* and *David L. Noonan* with him on the brief; *Anderson Russell Kill & Olick, P. C.,* attorneys), for Armstrong World Industries, Inc. and others, third-party defendants-appellants.

*Douglas A. Boeckmann* of counsel *(Campbell, O'Connor & Carlucci,* attorneys), for A. W. Chesterton Co., third-party defendant-appellant.

*Margaret R. Smith* of counsel *(Fogarty & Fogarty, P. C.,* attorneys), for J. P. Stevens & Co., Inc., third-party defendant-appellant.

*Norman D. Lipton* of counsel *(Roger P. McTiernan, Sr., Suzanne M. Halbardier* and *Richard W. Wedinger* with him on the brief; *Barry McTiernan & Moore,* attorneys), for John Crane-Houdaille, Inc., third-party defendant-appellant.

## OPINION OF THE COURT

MURPHY, P. J.

The original plaintiff, David D. Swogger, commenced this action in 1979, seeking damages against owners of commercial ships, on which plaintiff had served as a crew member, for injuries allegedly resulting from asbestos exposure. For three decades, Swogger had served as a marine engineer on various ships owned by the five defendants. The asbestos exposure is alleged to have occurred on the high seas.

In 1980, Swogger died of mesothelioma. His widow was substituted as plaintiff. She served an amended complaint asserting a cause of action for wrongful death. In 1984, numerous third-party complaints were served seeking contribution or indemnity from manufacturers and installers of asbestos insulation products used in maritime vessels. The main action was settled between plaintiff and the shipowners, and the third-party actions were severed.

The third-party defendants moved to dismiss the actions for failure to state a cause of action (CPLR 3211 [a] [7]), on the ground that New York General Obligations Law § 15-108 bars the actions insofar as they seek contribution, and that indemnity is unavailable on the facts as pleaded.

■ The motion court denied the motions in all respects, holding that admiralty law rather than New York law applied to the third-party actions, and thus General Obligations Law

§ 15-108 did not bar the contribution claims (136 Misc 2d 410). We affirm.

In a well-reasoned decision, Justice Dontzin analyzed the jurisdictional issue under *Executive Jet Aviation v City of Cleveland* (409 US 249 [1972]) and its progeny. In *Executive Jet,* the Supreme Court formulated a two-prong test for determining whether admiralty jurisdiction applies to maritime tort claims. First, the tort must have a maritime location; before *Executive Jet,* this factor alone was determinative. Secondly, the wrong must "bear a significant relationship to traditional maritime activity" *(supra,* at 268). The motion court then analyzed the four factors that courts generally weigh when determining whether the "maritime status" requirement is satisfied: (1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; (3) the types of vehicles and instrumentalities involved; and (4) the causation and nature of the injury suffered. *(See, Kelly v Smith,* 485 F2d 520 [5th Cir 1973]; *Falgout Boats v United States,* 508 F2d 855, 857 [9th Cir 1974], *cert denied* 421 US 1000 [1975].)

We agree with the motion court's conclusion. Additionally, we believe that the application of admiralty law is proper and the *Executive Jet* requirement is satisfied for two reasons. First, the asbestos exposure occurred on the high seas outside the territorial jurisdiction of any State. Thus, no State is ousted of jurisdiction by applying admiralty law. *(See, Executive Jet Aviation v City of Cleveland, supra; Foremost Ins. Co. v Richardson,* 457 US 668, 677 [Powell, J., dissenting].) Secondly, Swogger was a seaman—a crew member—of vessels engaged in maritime commerce, not a longshoreman or harbor worker. Seamen are the "wards of admiralty", which jealously protects their rights, especially with respect to injuries caused by the hazards of maritime service over which they have little control. *(See, Pope & Talbot v Hawn,* 346 US 406 [1953].) When a crew member of a commercial vessel is injured in the course of maritime service, admiralty law is routinely applied to the resultant claims. *(See, Black v Red Star Towing & Transp. Co.,* 860 F2d 30 [2d Cir 1987]; *Daughtry v Diamond M Co.,* 693 F Supp 856 [CD Cal 1988].)

█ The dissent urges two grounds for granting the motions and denying the applicability of admiralty law. First, the dissent argues that under *Executive Jet (supra),* and *Keene Corp. v United States* (700 F2d 836 [2d Cir 1983]), the tort claim of injury from asbestos exposure lacks a "maritime

nexus" under the second prong of the *Executive Jet* test. Secondly, the dissent argues that admiralty law should not be applied because the allegations of the complaint are similar to those raised in multiple land-based asbestos lawsuits and do not implicate traditional concepts of maritime law such as seaworthiness, cargo damage, salvage, or the like. We disagree.

The similarity of the allegations of the third-party complaints here at issue to those presented in multiple land-based asbestos lawsuits should not be of any jurisdictional significance. The determination of whether admiralty law applies turns on whether the plaintiff was "doing what sailors normally do or used to do." *(See, Oman v Johns-Manville Corp.,* 764 F2d 224, 230 [4th Cir 1985].)* Surely, Swogger's claim as a crew member is distinguishable from the harbor worker cases relied upon by the dissent. It should also be noted that longshoremen and harbor workers are covered under a separate statutory framework. *(See,* Longshoremen's and Harbor Worker's Compensation Act, 33 USC § 901 *et seq.)*

In *East Riv. S. S. Corp. v Transamerica Delaval* (476 US 858 [1986]) the Supreme Court approved of a line of cases incorporating the law of products liability, including strict liability, into admiralty law *(supra,* at 865). The court then stated that under *Executive Jet (supra)* and its progeny, "[w]hen torts have occurred on navigable waters *within the United States,* the Court has imposed an additional requirement of a 'maritime nexus'—that the wrong must bear 'a significant relationship to traditional maritime activity.' * * * We need not reach the question whether a maritime nexus also must be established when a tort occurs on the high seas. Were there such a requirement, it clearly was met here, for these ships were engaged in maritime commerce, a primary concern of admiralty law" *(supra,* 476 US, at 864; emphasis added).

In our view, the language of *East Riv. S. S. (supra)* is dispositive of this appeal. Not only did the Supreme Court expressly approve of applying admiralty law to products liability claims, but it clarified the applicability of the *Executive. Jet* test where the injury occurred on the high seas. Inasmuch as the ships on which Swogger served were engaged in maritime commerce on the high seas, any maritime status requirement is thus satisfied. Also, the dissent's contention that the allegations of the third-party complaints do not implicate traditional concepts of maritime law is of no significance in light of the

express inclusion of products liability into admiralty law by the United States Supreme Court.

The dissent and appellants rely upon dicta contained in the Second Circuit's decision in *Keene Corp. v United States (supra)* that admiralty jurisdiction does not extend to product liability tort claims involving asbestos exposure where the asbestos-containing product is not specifically designed for maritime use. *Keene Corp. v United States* affirmed the dismissal of a third-party complaint against the United States for contribution and indemnification with respect to some 14,000 asbestos claimants whose exposure to asbestos occurred almost exclusively in land-based settings, including power plants, industrial plants, shipyards, and refineries. There is a vague allegation in *Keene* that some claimants may have been exposed on shipboard, but it is not clear from the decision whether the ship was at sea. In any event, the Second Circuit affirmed the dismissal of the Federal Tort Claims Act claim for defective notice of claim, and the dismissal of the admiralty claim on the ground that the group of 14,000 claimants had not made individualized claims with respect to which claimants alleged a maritime situs and which claimants did not. *Keene* did not involve any claims by crew members of ships engaged in commerce on the high seas.

The *Keene* decision went on to state that the third-party claims failed "to implicate traditional concepts of maritime law such as seaworthiness, cargo damage, salvage, or the like" *(supra,* at 844), for two reasons: first, that there was no allegation that the asbestos products were specifically designed for maritime use, and secondly, that the roles played by the United States for which contribution or indemnity was sought did "not bear a significant relationship to traditional maritime activities such as 'navigation and commerce' " *(supra,* 700 F2d, at 844). Thus, as the IAS court observed, the dicta in *Keene* would place the focus for determining admiralty jurisdiction on the activities of the manufacturer and the foreseeability of maritime use of its product rather than on the maritime activities of the claimant.

The Second Circuit's reasoning in *Keene (supra),* to the extent that it survives *East Riv. S. S. (supra),* has not been followed by any other circuit. In *Sperry Rand Corp. v Radio Corp.* (618 F2d 319 [5th Cir 1980]), a case relied upon by the motion court, the Fifth Circuit upheld admiralty jurisdiction over a third-party claim against a manufacturer of an allegedly defective gyro-pilot component, despite the fact that the

component was not specifically designed for maritime use. In *Austin v Unarco Indus.* (705 F2d 1 [1st Cir 1983]), the court criticized the *Keene* limitation, and cited numerous product liability cases heard in admiralty where the allegedly defective product was not specifically designed for maritime use. Both the Fifth and Eleventh Circuits have rejected the Second Circuit's reasoning in *Keene,* stating that the exclusive focus on just one factor—whether the product is designed for marine use—" 'produces a mechanistic analysis not entirely consistent with the thrust of *Executive Jet.'* " *(See, Woessner v Johns-Manville Sales Corp.,* 757 F2d 634, 641 [5th Cir 1985], citing *Harville v Johns-Manville Prods. Corp.,* 731 F2d 775, 784 [11th Cir 1984].)

The *Keene* dicta was carried to its logical extreme in *Lingo v Great Lakes Dredge & Dock Co.* (638 F Supp 30 [ED NY 1986]). There, citing the language of *Keene (supra),* and the specific rejection in *Keene* of the reasoning of *Sperry (supra),* the court held that the claims of a marine engineer for asbestos exposure on the high seas did not invoke admiralty jurisdiction because the asbestos product was not specifically designed for maritime use *(supra,* 638 F Supp, at 33). The *Lingo* decision also stated that in any other circuit the claims would be decided under admiralty law *(supra,* at 32).

In addition to *Keene* and *Lingo (supra),* appellant Asbestos Claims Facility relies upon *Petersen v Chesapeake & Ohio Ry. Co.* (784 F2d 732 [6th Cir 1986]). That case involved asbestos exposure claims of a machinist who served both in land-based capacities and on a car ferry on the Great Lakes—within the territorial navigable waters of the United States—and is thus distinguishable.

Although the plaintiff in *Petersen (supra)* was found by the jury to be a seaman for Jones Act purposes, and that finding was affirmed, the Sixth Circuit also affirmed the District Court's refusal to apply admiralty law, citing a line of cases denying the application of admiralty law to land-based ship repair or construction workers. *Petersen,* although a Jones Act case, differs from the present case in that Swogger was a crew member and his exposure occurred on the high seas—outside the jurisdiction of any State.

The rationale of *Executive Jet* in formulating the second prong requiring a maritime nexus is rooted in federalism. A principal concern expressed by the court was that admiralty jurisdiction not encroach upon State interests by ousting State

courts of jurisdiction in cases only fortuitously connected to navigable waters and which bear no relation to traditional maritime activity *(supra,* 409 US, at 273). A thorough discussion of the federalism rationale of *Executive Jet* is presented in Justice Powell's dissent in *Foremost Ins. (supra,* 457 US, at 677).

In *Executive Jet (supra),* the Supreme Court held that admiralty law did not apply to claims resulting from the crash of an airplane into Lake Erie within the territorial jurisdiction of the State of Ohio. The court observed, hypothetically, that admiralty jurisdiction would apply to an airplane crash on the high seas *outside territorial waters* where it had been engaged in transoceanic crossing—a function that "previously would have been performed by waterborne vessels" *(supra,* at 264). Significantly, in its hypothetical example, the court in *Executive Jet,* did not focus on the relationship of the cause of the crash to maritime activity; nor did the court apply the second prong of the test, because no State interest was present. Function and locality were sufficient on the high seas.

*Foremost Ins. Co. v Richardson* (457 US 668, *supra)* extended the *Executive Jet* test to torts occurring on navigable waters. Parenthetically, it is noteworthy that neither *Executive Jet* nor *Foremost Ins.* discussed the distinction, noted later in *East Riv. S. S.* (476 US 858, *supra),* between navigable waters within the United States and subject to regulation by a State, and the high seas, where no State jurisdictional interest is present. *Foremost Ins.* involved a collision between two pleasure boats on the Amite River which is within the territorial jurisdiction of the State of Louisiana. A divided court upheld the application of admiralty law to the resultant claims on the theory that the boats were involved in navigation, for which a uniform body of Federal maritime law is necessary. The dissent would have limited the applicability of admiralty law, at least on territorial waters, to vessels engaged in commerce.

█ The asbestos exposure in this case occurred on the high seas. No interest of the State of New York could be impinged upon by applying admiralty law, under which respondents would likely be entitled to seek contribution against joint tortfeasors. *(See generally, Cooper Stevedoring Co. v Kopke, Inc.,* 417 US 106; *Black v Red Star Towing & Transp. Co.,* 860 F2d 30 [2d Cir 1988] [en banc]; *Gooden v Sinclair Ref. Co.,* 378 F2d 576 [3d Cir 1967]; *see also,* Edelman, *A New Decision on Maritime Contribution,* NYLJ, Nov. 4, 1988, at 3, col 3.) We

express no view as to the merits of respondents' third-party claims, but hold only that admiralty law and not New York law applies.

In the emerging law of maritime contribution and indemnity, uniform rules have not yet been established and the United States Courts of Appeal have divided over issues involving both the applicability of admiralty law and the scope of the right to contribution or indemnity. As commentators have noted, the conflicting court decisions on the claims-over issue may in the end only be resolved by legislation *(see,* Edelman, *op. cit.).* However, the Second Circuit case, *Black v Red Star Towing & Transp. Co. (supra),* overruled *The Federal No. 2* (21 F2d 313 [2d Cir 1927]), which had denied any recovery against a third-party tort-feasor by a shipowner for reimbursement of maintenance and cure payments by the shipowner. While the decision in *The Federal No. 2* does not speak of contribution or indemnity, but only "reimbursement", the unanimous en banc decision in *Black* addresses indemnification, which it describes as "total contribution" *(supra,* 860 F2d, at 34). It is noteworthy that in *Black* the Second Circuit held that the right to indemnification was a matter of equity, not of contract. The court applied general maritime law to the indemnity cross claim, made by postverdict motion—admiralty law having been held applicable to the principal claim of the crew member—without any discussion of the *Executive Jet* test. It is also noteworthy that in *Black,* which involved injury to a crew member of a commercial vessel when he climbed a defective ladder at a Mobil Oil facility in Staten Island, New York, the court applied admiralty law, despite the fact that the tort had a State nexus. Thus, under *Black,* injury to a crew member of a commercial vessel for whom maintenance and cure is a right—provides a sufficient maritime nexus to the tort, even in territorial navigable waters.

In *Smith v Ithaca Corp.* (612 F2d 215 [5th Cir 1980]), a seaman's widow recovered in admiralty for the death of her husband from benzine exposure alleged to have occurred in living quarters on vessels on the high seas. Whether the hazardous agent is benzine or asbestos, when a seaman on the high seas is injured as a result of exposure on a vessel that is rendered unseaworthy under the law of admiralty because of the presence of the poisonous substance, the tort sounds in admiralty—not the law of the State in which the action happens to be brought.

Because admiralty law applies to the rights of the underlying claimant, the entire action should be determined under admiralty law. *(See, Marathon Pipe Line Co. v Drilling Rig Rowan/Odessa,* 761 F2d 229 [5th Cir 1985]; *White v Johns-Manville Corp.,* 662 F2d 243 [4th Cir 1981]; *Daughtry v Diamond M Co.,* 693 F Supp 856, *supra.)*

Accordingly, the order of the Supreme Court, New York County (Dontzin, J.), entered on August 14, 1987, which, *inter alia,* denied third-party defendants' motions to dismiss the claims for contribution, should be affirmed, without costs.

Ross, J. (dissenting). I respectfully dissent, since I would modify the IAS court order, and grant the third-party defendants' motions, insofar as to dismiss the claim for contribution, contained in the third-party complaint of Sea-Land Service, Inc.

In April 1979, Mr. David D. Swogger, a former marine engineer, commenced, in the Supreme Court, New York County, an action (Swogger action) to recover damages, against five defendants, including Sea-Land Service, Inc. (Sea-Land) and Puerto Rico Marine Management, Inc. (PRMMI), who had owned or operated certain of the 13 vessels Mr. Swogger had sailed on, during his more than 30-year career at sea.

After Mr. Swogger's death, on January 10, 1980, the complaint was amended to name his wife, Mrs. Anna Claire Swogger, executrix of his estate, as plaintiff. This amended complaint alleged that Mr. Swogger's mesothelioma condition had been caused by his exposure to asbestos-containing products on defendants' ships, and asserted the following theories of liability: products liability, Federal Jones Act negligence (46 USC § 688), unseaworthiness, and wrongful death.

Defendant Sea-Land, in 1984, commenced a third-party action for contribution and/or indemnification against 51 third-party defendants, who include manufacturers of asbestos and/or asbestos-containing products, shipowners, and shipyards. In substance, the Sea-Land third-party complaint alleges that the acts of all of the third-party defendants created the unsafe condition aboard the vessels, which resulted in Mr. Swogger's death.

Also, defendant PRMMI commenced an additional third-party action for contribution and/or indemnification against Todd Shipyards Corp. (Todd). The PRMMI third-party complaint alleges that Todd negligently removed and/or installed

certain asbestos products on a vessel upon which Mr. Swogger sailed.

In 1985, defendants Sea-Land and PRMMI, as well as the other three defendants, settled the Swogger action, and the two third-party actions were severed.

Subsequently, third-party defendant Todd moved to dismiss PRMMI's third-party complaint, and 32 of the third-party defendants named in Sea-Land's third-party complaint moved to dismiss that complaint. The IAS court denied those motions upon the basis that Federal admiralty law determines the rights of the parties (136 Misc 2d 410).

Thereafter, 20 third-party defendants in the Sea-Land third-party action, who consist of manufacturers of asbestos and/or asbestos-containing products, perfected this appeal.

In order for Federal admiralty law to apply to a tort action, the United States Supreme Court in *Executive Jet Aviation v City of Cleveland* (409 US 249, 268 [1972]) held a two-part test has to be satisfied. First, the tort must have occurred on the high seas or American navigable waters (locality test), and second, the tort must bear a significant relationship to traditional maritime activity (maritime nexus test).

It is hornbook law, that if admiralty jurisdiction applies to an action then "State courts must apply Federal Law 'to secure a single and uniform body of maritime law' *(Matter of Rederi [Dow Chem. Co.]*, 25 NY2d 576, 581, *cert denied* 398 US 939 * * *)" *(Lerner v Karageorgis Lines,* 66 NY2d 479, 484-485 [1985]).

Since neither the parties' nor my research indicates a decision of the United States Supreme Court or of an appellate court of this State, which has decided the issue of whether Federal admiralty law applies to a tort claim involving the exposure of maritime personnel, such as a shipyard worker or a seaman, to asbestos products, I turn for guidance to the decisions of the United States Courts of Appeal.

The United States Court of Appeals for the Second Circuit in *Keene Corp. v United States* (700 F2d 836, 844 [2d Cir 1983], *cert denied* 464 US 864 [1983]) held that admiralty law did not apply to an action brought by a seller of asbestos, since the maritime nexus test of *Executive Jet (supra)* had not been satisfied, in view of the fact that there was no connection between the asbestos products and "traditional concepts of maritime law such as seaworthiness, cargo damage, salvage, or the like". Specifically, the complaint of the plaintiff corpo-

ration in *Keene (supra)* alleged that the United States was liable for the costs of more than 14,000 personal injury and wrongful death actions brought against plaintiff, arising from occupational exposure to asbestos fibers contained in thermal insulation products manufactured or sold by an affiliate of plaintiff.

In view of the fact that my examination of Sea-Land's third-party complaint indicates to me it contains allegations similar to those presented in multiple land-based asbestos lawsuits, I find those allegations do not "implicate traditional concepts of maritime law such as seaworthiness, cargo damage, salvage, or the like" *(Keene Corp. v United States, supra,* at 844). Incidentally, the United States Court of Appeals for the Third Circuit in *Eagle-Picher Indus. v United States,* 846 F2d 888, 896 [3d Cir 1988]) noted: "As a threshold matter, every court of appeals to address the issue—the First, Second, Fourth, Fifth, Sixth, Ninth, and Eleventh—has concluded that asbestos-related claims by land-based *[sic]* ship workers bear no significant relationship to traditional maritime activity".

Based upon my analysis *supra,* I find that the IAS court erred, since admiralty law does not apply, and, therefore, New York substantive law is controlling *(The Admiral Peoples,* 295 US 649, 651 [1935]). Since Sea-Land settled the main Swogger action, under New York Law, the General Obligations Law § 15-108 (c), bars the contribution claim of Sea-Land's third-party complaint.

Accordingly, I would modify the IAS order to the extent of granting third-party defendants' motions, only insofar as to dismiss the claim for contribution in Sea-Land's third-party complaint.

ASCH, ROSENBERGER and SMITH, JJ., concur with MURPHY P. J.; Ross, J., dissents in an opinion.

Order Supreme Court, New York County, entered on August 14, 1987, affirmed, without costs and without disbursements.