**In the Matter of Sally ROBINSON, as Personal Representative of the Estate and Beneficiaries of Edward Robinson, Plaintiff,**

**v.**

**UNITED STATES of America, Nicolet, Inc., Individually and as Successor in Interest to Keasby & Mattison Company, Certainteed Corporation, Individually and as Successor in Interest to Keasby & Mattison Company, Keene Corporation, Individually and as Successor in Interest to Ehret Magnesia Manufacturing Company, the Celotex Corporation, Individually and as Successor in Interest to Philip Carey Manufacturing Company; Raymark Industries, Inc., Individually and as Successor in Interest to Raybestos-Manhattan, Inc., Armstrong World Industries, Inc., Eagle-Picher Industries, Inc., Individually and as Successor in Interest to Eagle-Picher Company, Defendant.**

**No. 86 Civ. 6334 (CSH).**

United States District Court,
S.D. New York.

Jan. 24, 1990.

Dickstein, Shapiro & Morin, Washington, D.C. (George Kaufmann and Howard N. Feldman, of counsel), and Levy Phillips & Konigsberg, New York City (Howard N. Feldman, of counsel), for plaintiff Sally Robinson.

McCarter & English, Newark, N.J. (Andrew T. Berry and John C. Garde, of counsel), for defendant The Celotex Corp.

## MEMORANDUM OPINION
## AND ORDER

HAIGHT, District Judge:

Defendant, an asbestos manufacturer, moves to dismiss for lack of subject matter jurisdiction plaintiff's tort claims for damages allegedly caused by her late husband's exposure to asbestos while serving as an engineer aboard vessels at sea. Defendant's motion raises the question whether such claims fall within the admiralty jurisdiction of the federal district courts. This Court has apparently not previously addressed that question. The Eastern District of New York answered it in the negative, *Lingo v. Great Lakes Dredge & Dock Co.*, 638 F.Supp. 30, 33 (E.D.N.Y.1986), Judge Sifton feeling "compelled" to that conclusion by the Second Circuit's holding in *Keene Corp. v. United States*, 700 F.2d 836 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983), which involved shipyard workers, not seamen.

### I.

Plaintiff Sally Robinson is the representative of the estate of her late husband Edward Robinson. During World War II Robinson was employed as an engineer on merchant ships operated by the United States. Plaintiff asserted wrongful death claims against a number of asbestos companies and against the United States. The asbestos companies manufactured asbestos insulation installed in the engine rooms of vessels upon which Robinson sailed. Plaintiff's claim against the United States as employer and shipowner was founded upon the Suits in Admiralty Act, 46 U.S.C.App. § 741 *et seq.* and the War Shipping Administration Clarification Act of 1943, 50 U.S.C.App. § 1291. Plaintiff's claims against the asbestos companies arise out of state law, alleged on the alternative bases of pendent or admiralty jurisdiction.

Plaintiff's admiralty action against the United States has been dismissed on the ground that the government's waiver of sovereign immunity embodied in the Suits in Admiralty Act and the Clarification Act was limited by the discretionary function exception, and that the governmental conduct complained of was discretionary within in the meaning of that exception. *Robinson v. United States*, 891 F.2d 31 (2d Cir. 1989). Accordingly the basis for pendent jurisdiction over plaintiff's state law claims against the asbestos companies disappears. Plaintiff may remain in this Court only if her complaint states tort claims against the asbestos companies which fall within admiralty jurisdiction. One of those companies, the Celotex Corporation, contends that plaintiff's claims are non-maritime. It moves to dismiss the complaint for lack of subject matter jurisdiction. Because the parties include affidavits in their motion papers, I treat Celotex's motion as one for summary judgment under Rule 56, F.R. Civ.P. *See* Rule 12(b).

### II.

The scourge of asbestosis increasingly engages the energies of federal and state courts. In *Keene Corp. v. United States, supra*, the Second Circuit dealt with claims asserted by Keene that the United States was liable for the costs of thousands of personal injury and wrongful death actions against Keene arising from occupational exposure to asbestos fibers contained in thermal insulation products manufactured or sold by a Keene affiliate. To avoid the bar of sovereign immunity, Keene invoked a number of jurisdictional statutes, only two of which are pertinent here: the Suits in Admiralty Act, and the Public Vessels Act, 46 U.S.C.App. §§ 781–790. Keene invoked those statutes on the theory that its claims against the United States fell within admiralty jurisdiction.

The Second Circuit held that Keene's claims were non-maritime. "Most" of the claimants against Keene were shipyard employees who "typically" worked with or around thermal insulation asbestos products, becoming exposed to and inhaling asbestos fibers during the course of their work. 700 F.2d at 838–39. The government sold Keene some of the asbestos used in its products, and Keene's asbestos-containing products were sold under contract both to the government and to others. Confronted by a myriad of death and injury

claims, Keene sued the government for indemnification, contribution and apportionment, asserting causes of action sounding in negligence, breach of warranty, strict liability, and unjust enrichment. *Id.*

The Second Circuit held that Keene's claims did not sound in admiralty. Citing *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), and *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), Judge Winter wrote at 843:

> Admiralty jurisdiction in tort exists when the wrong (1) took place on navigable waters ("situs") and (2) "bear(s) a significant relationship to traditional maritime activity" ("status").

The Second Circuit subjected Keene's invocation of admiralty jurisdiction to this two-pronged analysis. Keene lost on both prongs. First, most of the claimants against Keene were workers exposed to asbestos in land-based commercial facilities, thereby failing the situs test. *Id.* at 844. Attempting to salvage at least part of its admiralty claim, Keene offered to make an individualized showing that certain claimants were exposed in a maritime situs. But the Second Circuit rejected that effort in its analysis of maritime status, stating at 844:

> Moreover, Keene has not met the second prong of the *Executive Jet* test, the status requirement, and a hearing on individualized situs would be futile.

This analysis is particularly pertinent to the case at bar. Keene argued that the installation and use of its products on shipboard was sufficient to meet the status test. Rejecting the argument, the Second Circuit said:

> However, Keene's argument makes the geographic location of a tort decisive as a matter of law and thus effectively collapses the situs and status test, a result *Executive Jet* expressly seeks to avoid. In *Kelly v. United States,* 531 F.2d 1144, 1146 (2d Cir.1976), we stated that the status test is satisfied when the "acts and omissions ... sufficiently relate to traditional maritime activity," whether

landbased or not. Under the *Kelly* decision, two elements are critical in this case. First, Keene does not allege that its insulation was designed specifically for maritime use. Indeed, it appears from the complaint that it was used in a variety of land-based plants and refineries. Second, many of the roles attributed to the government and allegedly giving rise to Keene's cause of action—the government's sale of asbestos to Keene, its specification of asbestos and a component of insulation it purchased from Keene, its alleged breach of its duty to inspect the work place, its obligations as a promulgator of health regulations—do not bear a significant relationship to traditional maritime activities such as "navigation and commerce."

*Id.* at 844.

Continuing its analysis of this second consideration, the Second Circuit observed that the government's roles in *Keene* were "less intimately connected" with traditional maritime activities "than contracts for shipbuilding, contracts to supply materials for ship constructions and warranties arising out of such contracts, which are non-maritime." *Ibid.* (citing cases). The government's sale of asbestos to Keene "is a contract lacking in maritime flavor, as is, absent further specification, Keene's provision of insulation to the government. Viewed as a whole, therefore, Keene's claims fail to implicate traditional concepts of maritime law such as seaworthiness, cargo damage, salvage, or the like." *Ibid.* Accordingly the Second Circuit held Keene's claims to fall outside admiralty jurisdiction. To the extent that decisions in other circuits pointed in a different direction the Second Circuit expressly declined to follow them. *Id.* at 844–45.

In the case at bar, Robinson was a marine engineer and hence a seaman, not a shoreside worker. The identically situated plaintiff in *Lingo v. Great Lakes Dredge & Dock Co., supra,* argued that made all the difference. But Judge Sifton, looking to *Keene,* concluded it made none: he held the Second Circuit's analysis precluded admiralty jurisdiction. Judge Sifton read *Keene*

as focusing "not on the injured individual's activities, but rather on the defendants' activities." 638 F.Supp. at 33. Judge Sifton perceived in *Keene* a "requirement that there be some independent connection between the asbestos product and traditional maritime activity ..." *Ibid.* That followed from the Second Circuit's expressed disapproval in *Keene* at 844–45 of the Fifth Circuit's opinion in *Sperry Rand Corp. v. RCA*, 618 F.2d 319 (5th Cir.1980), sustaining an admiralty action for indemnity or contribution against a manufacturer whose products allegedly caused a collision and grounding of a vessel in navigable waters even though the products were manufactured on land and were not alleged to be designed for maritime use. Judge Sifton wrote in *Lingo:*

> In the present case, plaintiff does not allege that any of the manufacturers supplied products of a distinctly maritime nature. Given the explicit rejection of *Sperry* by the Second Circuit in *Keene*, this Court is compelled to conclude that it does not have admiralty jurisdiction over the present case.

Judge Sifton's analysis is limited to tort concepts. Of course, a contract theory was not available to plaintiff in *Lingo* or the plaintiff at bar, since contracts to supply material for ship construction are non-maritime. *Keene* at 844.

Plaintiff at bar seeks to distinguish *Lingo* on the ground that the asbestos installed in the engine rooms where Robinson worked was a product "of a distinct maritime nature." Brief at 10. Plaintiff supports this assertion with a number of advertisements published by Celotex's predecessor in interest touting the effectiveness of its insulation in ships' engine rooms.

But these advertisements do not rise to the level required by the Second Circuit in *Keene*, that the insulation be "designed specifically for maritime use." *Id.* at 844. Celotex offers the affidavit of Arthur P. Mueller, a retired manager of Celotex in a position to know, who says that neither Celotex nor its predecessor manufactured or supplied asbestos containing products "which had a distinct and/or unique maritime application or nature." All the companies' products manufactured or sold for ultimate installation on machinery aboard ships "had equal utility as a high temperature insulation product on land-based machinery, including boilers, engines and pipes." Products used on board ships "had the same composition as the asbestos-containing products manufactured or sold ... for ultimate installation on land." The companies "never manufactured an asbestos-containing product for special application on board any ship and never did any scientific research specifically addressed to the use of asbestos insulation aboard ship." There is no reason to doubt these assertions, nor the likelihood that comparable advertisements praising the products for use in land based structures appeared at the same time. *Keene* appears to hold that use of the product "in a variety of land-based plants and refineries" negates the concept of a design "specifically for maritime use." *Ibid.* In *Keene* that land-based use appeared from the allegations of the complaint. Here it appears from defendant's affidavit. The result is the same.

I think Judge Sifton is right in concluding that were this case in another circuit, plaintiff's status as a seaman and the situs of his injury on board vessels "would be a critical distinction compelling the conclusion that admiralty jurisdiction exists for plaintiff's claim." But Judge Sifton and I live in the Second Circuit and are bound by its pronouncements. I do not see, any more than could he, how Judge Winter's analysis of maritime "status" in *Keene* can be reconciled with admiralty jurisdiction in the case at bar.

### III.

Accordingly the Second Circuit's decision in *Keene* requires dismissal of the complaint at bar unless, as plaintiff contends, the Supreme Court's subsequent ruling in *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), requires a different result.

In *East River* the defendant contracted with a shipbuilder to design, manufacture, and supervise the installation of turbines

that would be the main propulsion for four supertankers constructed by the shipbuilder. Upon completion the vessels were bareboat chartered to plaintiffs, who operated them. When the ships were put into service, the turbines malfunctioned due to design and manufacturing defects. The turbines themselves suffered damage. No one was killed or injured.

Plaintiff charterers sued the turbine manufacturer in tort on product, strict liability and negligence theories. They invoked admiralty jurisdiction. 476 U.S. at 861, 106 S.Ct. at 2297. The Supreme Court held that in admiralty, "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. at 2302 (footnote omitted). In other words, "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss." *Id.* at 876, 106 S.Ct. at 2304. The Court did not reach the issue "whether a tort cause of action can ever be stated in admiralty when the only damages sought are economic." *Id.* at 871 n. 6, 106 S.Ct. at 2302 n. 6.

At first blush this particular holding would not seem to assist plaintiff at bar. However, *East River* requires further study. The Court prefaced its specific holding by an equally explicit, if more general, ruling "recognizing products liability, including strict liability, as part of the general maritime law." *Id.* at 865, 106 S.Ct. at 2299. *East River* constitutes an "incorporation" by the Supreme Court "of products liability into maritime law." *Id.* at 866, 106 S.Ct. at 2299. Furthermore, the court's rationale in rejecting strict products-liability recovery in admiralty when the only injury is to the defective product itself makes it plain enough that such liability attaches when the defective product injures or kills persons. I do not know how else to interpret the court's analysis at 871-75, 106 S.Ct. at 2302-04. The same result obtains with respect to liability based upon negligence.

Those converse propositions, inescapably derived from the Court's reasoning in *East River*, assist plaintiff at bar because she asserts a wrongful death claim against Celotex based on negligence and strict products liability concepts. Furthermore, in support of her admiralty suit against Celotex plaintiff may point to the Court's incorporation in *East River* of products liability, including strict liability, "as part of the general maritime law." 476 U.S. at 865, 106 S.Ct. at 2299.

But the question remains: do the particular facts at bar state an admiralty claim? The court in *East River* said that the charterers' tort claims "clearly fall within the admiralty jurisdiction", *id.* at 863, 106 S.Ct. at 2298, a threshold question which the parties did not appear to have squarely addressed (defendant in *East River* contended that the charterers' actions were not "cognizable in tort", a somewhat different proposition). The Court found admiralty jurisdiction in *East River* because the damage to the turbines occurred while the vessels "were sailing on the high seas" and were "discovered in port, also a maritime locale." *Id.* at 864, 106 S.Ct. at 2298. The Court then said in language stressed by plaintiff at bar:

When torts have occurred on navigable waters within the United States, the Court has imposed an additional requirement of a "maritime nexus"—that the wrong must bear "a significant relationship to traditional maritime activity." *See Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 268 [93 S.Ct. 493, 504, 34 L.Ed.2d 454] (1972); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 [102 S.Ct. 2654, 73 L.Ed.2d 300] (1982). We need not reach the question whether a maritime nexus also must be established when a tort occurs on the high seas. Were there such a requirement, it clearly was met here, for these ships were engaged in maritime commerce, a primary concern of admiralty law.

*Ibid.*

This discussion does not squarely meet one factor Judge Winter considered deci-

sive in *Keene:* plaintiff's inability to allege that the asbestos insulation "was designed specifically for maritime use." The defective turbines in *East River*, contrastingly, were specifically designed for installation and use aboard ocean-going vessels. But does that distinction make a difference in determining whether the case at bar falls within admiralty jurisdiction, as explicated in *East River?* I conclude that it does not.

In *Keene* the Second Circuit derived the maritime "nexus" or "status" requirement from *Executive Jet Aviation, Inc. v. City of Cleveland, supra* and *Foremost Insurance Co. v. Richardson, supra.* Those cases involved torts occurring on navigable waters "within the United States", a phrase the Court stressed in *East River.* *Executive Jet* concerned the fortuitous (geographically speaking) crash of an airplane into Lake Erie within the territorial jurisdiction of Ohio. *Foremost Insurance* involved a collision between two pleasure boats on a navigable river within the territorial jurisdiction of Louisiana. Plaintiff at bar alleges that her husband suffered injury resulting in death by inhaling asbestos fibers while serving in the engine rooms of vessels operating on the high seas, "engaged in maritime commerce, a primary concern of admiralty law." *East River* at 864, 106 S.Ct. at 2298. At the very least, *East River* leaves open the question "whether a maritime nexus also must be established when a tort occurs on the high seas." *Ibid.* That expressed uncertainty strikes at the foundation of the Second Circuit's analysis in *Keene,* since Judge Winter's opinion necessarily assumes that the nexus requirement applies to injuries suffered as the result of products "ultimately installed and used on shipboard", 700 F.2d at 844.

I agree with plaintiff at bar that *Executive Jet* "nexus" or "status" analysis is appropriate only in that borderline case where the fortuitous application of an admiralty situs would oust state jurisdiction

and rules of law. The case at bar involves a tort occurring on the high seas, governed by theories of liability explicitly made a part of the general maritime law in *East River.* I conclude that *East River* precludes an asbestos manufacturer from arguing that because asbestos used on shipboard was not specifically designed for maritime use, a seaman injured by the asbestos *on the high seas* cannot invoke admiralty jurisdiction. After *East River* the seaman can do so.[1] The case might be different if a manufacturer could not reasonably have foreseen its product's use on ocean-going vessels. But Celotex's predecessor in interest specifically advertised the product as desirable for installation in vessels' engine rooms.

For the foregoing reasons, defendant's motion to dismiss the complaint for lack of subject matter jurisdiction is denied.

It is SO ORDERED.

---

**1.** A second factor stressed by the Second Circuit in *Keene,* the non-maritime character of defendant's contract, is also nullified by *East River.* Contracts to supply turbines for vessels under construction are non-maritime, but that did not deter the Court from finding admiralty jurisdiction in tort where the product of a non-maritime contract caused damage on a vessel on the high seas or in port.