## Case No. 8,815.

McGUIRE et al. v. The GOLDEN GATE.

[1 McAll. 104.] [1]

Circuit Court, N. D. California. July Term, 1856.

ADMIRALTY—TORTS OF MASTER — PASSENGER—LIBEL IN REM—ACTUAL DAMAGES.

1. The owners of a ship are liable for the torts of the master, when they involve a breach of the passenger contract, and are done while acting strictly within the scope of his employment.

[Cited in Taylor v. Brigham, Case No. 13,781.]

2. The rule of damages in such cases, where recovery is sought on the constructive consent of the owner, must be the actual damages incurred; being innocent of any participation in the tort, the damages are not to be made punitive.

[Cited in Lake Shore & M. S. Ry. Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 263.]

[3. Cited in The Yankee v. Gallagher, Case No. 18,124, to the point that where no additional testimony is taken, the appellate court will not readily interfere with the amount of damages decreed by the court below.]

[1] [Reported by Cutler McAllister, Esq.]

[Appeal from the district court of the United States for the Northern district of California.]

This is a proceeding in rem for a violation of a passenger contract, arising out of the torts of the master and mariners of the ship. Exceptions were taken to the jurisdiction of the district court of the United States for the Northern district of California, where the libel was filed. The exceptions were overruled by that court, a decree rendered against the respondent [case unreported], and an appeal prosecuted to this court.

Manchester & Hodges, for libelants.
Hall McAllister, for respondents.

McALLISTER, Circuit Judge. As to the power of this court to entertain jurisdiction of a proceeding in rem for the torts of a master, I feel considerable doubt. That the owner is civiliter liable for all violations growing out of the crimes of the master or mariners, will not be asserted. Yet, it is difficult to suppose a crime committed upon a passenger by a master or mariner, which will not involve a breach of the passenger contract. There must be some limit to the owner's liability; but it is not easy to fix a uniform one. There is no case which has drawn such line with accuracy; but the owner's responsibility is limited only by general definitions. An inquiry into the authorities will, I think, show that no case has gone to the extent of sustaining a proceeding in rem for the commission of a crime by a master or mariner, on the ground, solely, that it was a violation of the passenger contract. That there has been a gross violation of the contract in this case, is proved by the evidence; that the obligations of that contract are all that Judge Story has described them to be, in Chamberlain v. Chandler [Case No. 2,575], which was a proceeding in personam against the master, is undoubtedly true. But the question is, whether the liability of the owner is commensurate with the crimes of all in his employ on board his ship, which involve a breach of the passenger contract; and, if not, where is the limit? Certain authorities have been cited by the proctors for libelants. The case of Marshall v. Bazin [Id. 9,125], was a proceeding in rem, it is true; but the cause of the action was one purely of contract,—the failure to carry the passenger after having stipulated to do so. The case of Chamberlain v. Chandler [supra], was a proceeding in personam, and does not touch this question. In Sherwood v. Hall [Case No. 12,777], the principle affirmed is, that the owner is liable where the master shipped a mariner who had run away from another vessel under circumstances amounting to notice that the shipment was unauthorized by his father. It is to be observed, in this case, there was no breach of the peace, no indictable offense. The shipment of the minor was an act done in the course of the master's employment,

for the benefit of the owner; and hence, the assent of the latter may have been implied. The case next cited is that of the Rebecca [Id. 11,619]. It applies exclusively to the lien which the merchant has on the ship for lost goods. Reference was also made to the case of the Phebe [Id. 11,064]. It merely enunciates the principle that the shipper has a lien on the vessel for the due execution of the contract by bill of lading. The object, doubtless, of citing the two foregoing authorities, was to show the liability for the loss of goods by reason of the torts of the master or mariners and they enunciate sound law. It may be admitted, that the reasons which lie at the foundation of the rule commend to the legislature the propriety of extending, to some extent, to passengers the rules which govern the liabilities of ship-. owners as to goods; but to do so is not the province of the courts. The next case is that of Dean v. Angus [Id. 3,702], which affirms the doctrine that the owners of a vessel are liable for the wrongful capture at-sea by the master; he acting under an authority from the owners to capture. The next case is that of Dias v. The Revenge [Id. 3,877]. This case would seem to militate against the proposition contended for by libelants. The libel in that case was filed to make the owners liable for damages sustained by the underwriters of certain Spanish and Portuguese vessels, for piratical acts of the officers and crew of the Revenge, and the question arose whether the owners of a commissioned privateer are liable, civilly, for the piratical acts committed by the officers and crew of their vessel. The court held, that where an illegal capture as prize of war was made, the owner is liable civilly; but that he is not liable for the piratical acts of the master and officers. The court say: "The liability of those to whom the libelants owe their wrongs, is admitted: their inability to make retribution, if such should be their situation, is a misfortune for which the tribunals of the country can supply no remedy. Those against whom redress is sought in this instance, did not commit, nor in any manner authorize or countenance the spoliation of which the libelants complain. They are, therefore, equally innocent with the libelants, and are equally entitled to the protection of the court." The last decided case cited by libelants, is that of The New World v. King, 16 How. [57 U. S.] 469, which simply decides that a passenger may recover in rem for injuries received from the explosion of a boiler, the result of gross negligence of those on board the steamer and in control of her. No one of the foregoing authorities (and they are all that have been cited), asserts the principle that by varying the form of suing for a breach of the contract, and not directly for the tort,—that the owner is civilly liable for the crimes of the master or mariners, because the commission of them involves the breach of a contract when committed upon the person of a passenger. The proceeding in this case is a libel against the vessel for the breach of contract arising out of assaults and batteries committed by the master and officers of the ship on two of the passengers. The 16th rule of admiralty prescribes, "that in all suits for an assault and battery on the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be in personam only." Mr. Benedict [Ben. Adm.] (section 309), referring to this rule, considers it as applicable only to a case where the action is technically for an assault and battery as a mere tort; but not applying to cases where the action is brought for breach of contract and the assault and battery constitute the gravamen of the action. I cannot consider this construction very satisfactory; but as it has been published for some time, and has received no contradiction from any court or text-writer, I shall act upon it for the present to the extent this case goes. I have commented more fully on the question of jurisdiction, so that, while the power of the court in this case is affirmed, this decision may not be misapprehended, or extended beyond the case at bar. "I desire that nothing which may be said in the course of these remarks shall be extended to embrace any other case." Waring v. Clarke, 5 How. [46 U. S.] 441. In this case, the testimony ascertains that the ill-treatment of the two passengers, the libelants, by the captain and his officers was inflicted while in the avowed preservation of the discipline and police of the ship. They were acting directly in the employment of the owners. But acting within its scope they exceeded its limits; and, in analogy to the case of Sherwood v. Hall [Case No. 12,777], where the owner was made liable for the abuse by the master of his authority to enlist,—the owners in this case must be made liable for the abuse and excessive use of the authority confided to them. In that case, the assent of the owner might be implied, as the master was acting at the time for the owner's benefit. It cannot be so in this case, to that extent; but upon the best consideration I can give to this case, and in view of the importance of requiring a strict liability of the owner on the passenger contract, my conclusion is, that the exceptions to the jurisdiction were properly overruled by the district court. I should be pleased if the libelants, who are the only party who can carry this case up, claiming as they do more than $2,000, would appeal it. A decision would, in that case, be obtained from the supreme court, ascertaining authoritatively the liability of ship-owners for the torts of masters amounting to a breach of the peace, where they involve a breach of the passenger contract.

The remaining question is the amount of damages decreed by the district court. I am aware that the district judge is well versed as to the rule by which damages are to be adjusted; but am constrained to be-

lieve, that in this case he has taken counsel from the grossness of the abuse by the master of his authority, more than that rule will permit. Ordinarily, this court does not interfere with the amount of damages decreed by the court below. The district judge has the witnesses before him, and therefore has an opportunity of arriving at the truth, not within the grasp of this court, where the testimony is in writing. Where, therefore, no additional testimony is taken, I do not feel inclined to hastily disturb a decree on the point of damages; but where the adjustment of them depends, as in this case, upon the correct enunciation of principles, then the amount loses consideration in the importance of establishing a correct basis on which to rest their adjustment. It is admitted that the owners can only be made liable for such damages as flow directly from the breach of the contract. In an action against the perpetrator of the wrong, the aggrieved party would be entitled to recover not only actual damages but exemplary,—such as would vindicate his wrongs, and teach the tort feasor the necessity of reform. In an action against such, it would, in the language of the district judge, "be the duty of the court to apprise officers of ships that the crews are not on every casual disturbance to be called with capstan-bars to inflict dangerous and indiscriminate blows on unoffending passengers." In such actions, the damages may be inflamed to teach offenders their duty; but not when the proceedings are against the owners for breach of contract, who, in the language of Judge Washington, did not commit or in any manner countenance the wrong, and who, with libelants, are equally entitled to the protection of the law. Such should not be made liable beyond the amount of actual damages, uninfluenced by any considerations of punishing the act of the perpetrator on the ground of breach of contract. Dias v. The Revenge [Id. 3,877]. In the case of the Amiable Nancy, 3 Wheat. [16 U. S.] 558, a libel was filed to recover damages for a marine tort. The court say: "Upon the facts disclosed in the evidence this must be pronounced a case of gross and wanton outrage, without any just provocation or excuse. And if this were a suit against the original wrong-doers, it might be proper to go yet further, and visit upon them in the shape of exemplary damages the proper punishment which belongs to such lawless misconduct. But it is to be considered that this is a suit against the owners of the privateer; upon whom the law has from motives of policy, devolved a responsibility for the conduct of the officers and crew employed by them, and yet, from the nature of the service, they can scarcely ever be able to secure to themselves adequate indemnity in case of loss."

This reasoning is appropriate to the case at bar. The owners are sought to be made liable, by a constructive consent annexed to the contract, for criminal acts of the master and mariners, alleged as the gravamen of the breach of contract done without their knowledge, and of which they are as innocent as the libelants. In an action ex delicto or ex contractu in such a case, the measure of damages should be adjusted to the loss proved to have been actually incurred, uninfluenced by the conduct of the real wrong-doer, who is civilly and criminally liable for his acts to the injured party. In this case, the libelants were steerage passengers on board the Golden Gate. They are represented to be laboring men, without means; and have therefore filed their bill in forma pauperis. In relation to one of them, James McGuire, the district judge says: "He seems to have received a violent blow on his wrist, or that it has been severely strained, which prevents the muscles from being used without considerable pain." The judge proceeds to state, that the physicians assert with considerable confidence that the rigidity of the muscles will be overcome by use, and conclude that for the present he is unable to make much use of it, and that condition must continue under favorable circumstances for a month or two. It is further stated that from the 31st day of May, when the injury was received, until the trial (a period of about three and a half months), the libelant has been practically deprived of the use of his hand; that he was a sea-faring man, and that his last employment was as mate. Now, under the rule I have endeavored to show (this proceeding being against the innocent owner, and not against the original wrong-doer), the actual loss is to be the measure of damages. Apply this rule to the case. Three and a half months intervened between the receipt of the injury and the trial. Add to these, two more months for probable loss of employment by reason of the loss of the use of his hand. We have then, five and a half months; and allowing for loss of wages at $65 per month, we have the aggregate sum of three hundred and fifty-seven dollars and fifty cents. This gives to the libelant wages for the whole period. There is no evidence as to the payment of a doctor's bill, or any other item of expenditure; still, in addition to loss of wages, there are other sources of expense, which, though not directly proved, may be inferred. To meet them, double the amount of wages, add for proctor's fees $250, and we have an aggregate of $965; which will fully cover all actual loss, and amount to compensatory damages. To this libelant, the court below decreed the sum of fifteen hundred dollars.

With regard to the other libelant, Thomas M. Place, it appears from the statement of the district judge "that he received a violent and dangerous blow, without any fault on his part." The blow inflicted no permanent injury, with the exception of a slight scar or indentation on the side of the face. "It must have caused, however (says the judge),

much suffering; and he appears to have been obliged to live on liquids for some time, from his inability to chew hard food." It is evident that the wanton act of the officer in striking the libelant, evidenced as it was by the freedom from fault of the latter, must have entered into the estimate made of the loss of libelant, which was fixed at $600. In fact, the decree is preceded by the statement "that it is the duty of the court to apprise officers of ships that the crews are not, on every casual disturbance, to be beaten with capstan-bars," &c. Now, it is most true that such notice should be given in actions brought against officers themselves; but in actions against innocent owners, while the policy of the law holds them liable for actual damages as proved, these cannot be enhanced to admonish the guilty. There was no proof of actual loss by this libelant, and perhaps against the owners he is entitled to nothing. But he received a violent and dangerous blow without any provocation given, and must have been subjected to some suffering. Seeking a money compensation from a party who had no participation in the matter, I consider $250 a sufficient amount. I am aware that his honor the district judge, is familiar with the distinction to which this court has alluded in the adjustment of damages; but it appears to me, on reading his opinion, that he has been unconsciously. and not unnaturally, betrayed into awarding punitive rather than compensatory damages. A decree must be entered in accordance with the foregoing views, and handed for examination .and signature to the judge.