MORRISON (CRANE v.). See Case No. 3,-355.

---

## Case No. 9,847.

### MORRISON et al. v. The JOHN L. STEPHENS.

[Hoff. Op. 473.]

District Court, N. D. California. April 3, 1861.

CARRIERS OF PASSENGERS—CONDITIONS ON TICKET—MISCONDUCT OF OFFICERS—PUNITIVE DAMAGES.

[1. The printed conditions of a ticket inconsistent with a valid oral contract of carriage are not conclusive against the passenger.]

[2. Punitive damages are recoverable from a carrier for forcing a husband and wife, who have contracted for the exclusive use of a stateroom, to receive another male passenger therein.]

[3. The disappointment and irritation of a husband, and the discomfort and suffering of his invalid wife, resulting from assigning them to separate staterooms, in violation of the contract of carriage, are elements of damage.]

[This was a libel by Robert F. Morrison and wife against the steamship John L. Stephens for breach of a passenger contract.]

Jas. T. Boyd, for libellant.
Hall McAllister, for claimants.

HOFFMAN, District Judge. It is alleged by the libellant R. F. Morrison that, being desirous to procure a passage from New York to San Francisco, he applied at the office of the company in the former city. That he was anxious to obtain for himself and wife the use of a stateroom exclusively for themselves, and inquired of the agent whether he could not secure it by paying the full amount of passage money for two persons, but he was informed that it would be necessary to pay the full fare for three persons. After some negotiation it was finally agreed that the libellant should have the use of the entire stateroom on payment of five hundred and twenty-five dollars, the price of a single passage being two hundred and twenty-five. On arriving at Panama, the libellant was informed that the third berth in the stateroom, assigned to himself and wife, was to be occupied by a male passenger. Against this arrangement he remonstrated with natural indignation, and presented his ticket to Messrs. Knight & Wood, the agents of the company, strenuously insisting that he had paid for an entire stateroom, that his ticket called for it, and that he was entitled to it. He also represented the extreme debilitated condition of his wife, which rendered his personal attendance upon her indispensable to her comfort, and perhaps to her safety. The agents positively declined to accede to his demand.

The next morning he went on shore to see Mr. McLean, the principal agent of the company. Mr. McLean admitted the genuineness of the ticket, and, it would seem, made no question as to the right of the libellant, under it, to the exclusive use of a stateroom, but stated that the way bill, by which alone he was required to be governed, was different, and that the latter showed that Mr. and Mrs. Morrison were entitled each to a berth in the same stateroom, and that a male passenger was entitled to the third berth. After some negotiation, the agents of the company—sensible, no doubt, of the impropriety as well as the gross breach of contract involved in putting a male passenger and a stranger in the same stateroom with a husband and wife—effected an arrangement by which Mrs. Morrison was assigned a berth in a room with two other females, and the libellant a berth in a room with two other male passengers. For this breach of contract the libellants bring suit.

The answer of the claimants alleged that the libellant in fact purchased three tickets, one for each berth in the stateroom, and himself sold the third ticket, which entitled the bearer to the third berth. But in support of this allegation no proofs whatsoever are adduced; on the contrary, the evidence of the terms of the contract made by libellant with the agent are conclusively proved by the testimony of a friend who accompanied him to the office, and who, in fact, conducted the negotiation. It is positively testified by this witness that Mr. Morrison insisted on having a stateroom to himself; that he stated he would have one if it cost him all he possessed, and that the condition of his wife's health rendered it absolutely indispensable; that the agent, himself, offered to let him have the room on the payment of one hundred and twenty-five dollars over and above the price of two passages, to which Mr. Morrison assented, and he (the agent) thereupon sold to a bystander, for one hundred dollars, a ticket for a passage, but without any berth. I have no doubt whatever that such was the true nature of the transaction. The ticket received by Mr. Morrison was presented to the agents at Panama, as the evidence of the justice of his claims and the nature of the contract. No doubt seems to have been expressed or entertained as to its genuineness, or as to its expressing, on its face, that Mr. M. was entitled to "all" the stateroom. It is exhibited in court, and though not formally proved by evidence of the hand-writing of the agent who signed it, it is stated by a witness to be the same as that presented by the libellant to the agents. The witness, however, is unable, positively, to swear to it, as there is no mark upon it, but he expresses his firm belief that it is the same. A copy of it is appended to the libel, which is sworn to by Mr. Morrison. This, though not strictly evidence of the cause, is not to be wholly disregarded, especially where, as in the present case, the character and high standing of the libellant are known to the court, and recognized by the community. But, independently of the ticket, the nature of the contract, the amount paid by the libellant, and the consideration agreed to be given for the extra sum paid by him, are proved beyond doubt. And if to this we add the extreme improbability that a person with the feelings and sentiments which the condition in life of the libellant justify us in attributing to him would have consented that a stranger, and a male, should share the stateroom of himself and his invalid wife, we may conclude with absolute certainty that the breach of contract has occurred precisely as alleged. If the arrangement proposed, and for some time insisted on by the agents, had been carried into effect, and the libellant and his wife had been compelled to submit to the intrusion of a male passenger into their stateroom during the entire voyage, it would not be easy to assign a limit to the damages which should be awarded for so gross and outrageous a breach of contract. Happily, however, an arrangement was made, which, at least, involved no violation of the common decencies of life. The stateroom assigned to Mrs. M., with two other females, was situated on the gangway or passage leading into the cabin. In some respects it seems to have been a desirable room, as it was in the center of the vessel, and near a windsail, which descended into the passage. But in other respects it was of an inferior kind. It was of somewhat less than the usual size, an angle or corner being cut off where the passage opened on the guards. The passageway, owing to the very crowded state of the vessel, was constantly thronged with passengers, especially about meal times; and a tier of standee berths was erected at night along the guards, just opposite to its door. These and some other inconveniences incidental to its position, such as a water tank constantly resorted to by second-class passengers, made the room probably far less comfortable than some others farther aft, though it may, notwithstanding, have been preferable to those which opened inside on the saloon. On the whole, the evidence, I think, shows that the room assigned to Mrs. M. was perhaps such as, if it had been given exclusively to her and her husband's use, would have satisfied the terms of the contract, although it was by no means one of the best in the ship; but, on the other hand, it is equally clear that the inconvenience and discomfort which arose from the failure to comply with the contract, which the libellant had taken so much pains to make, were not mitigated or compensated for by the size, the situation, or any other extraordinary advantages of the stateroom his wife was compelled to occupy. It is also shown, by the testimony of

the physician who attended her, that, at the time of her departure, Mrs. M. was suffering from painful chronic maladies. In fact, the voyage appears to have been recommended in the hope of benefiting her health, and with the same object her husband was induced to make extraordinary provision for her comfort by securing a stateroom for their use, where she might at all times command his services and society. It is testified by the passengers that during the voyage she seemed to be feeble and suffering, and that she very rarely left the stateroom, which, as has been stated, she shared with two other females.

It is not easy to measure by a pecuniary standard the damages which should be awarded to the libellants for the breach of contract which has been stated; nor is it possible to arrive at any precise estimate of the annoyance, the discomfort, and even the suffering Mrs. M. must, no doubt, have experienced from being compelled to make the voyage in a stateroom occupied by two other passengers, perhaps strangers, and necessarily deprived, except occasionally, of the society and services of her husband. To the husband, the mere personal inconvenience of having a stateroom assigned to him, with two other passengers, was not, of course, so great. But the disappointment and irritation at the failure to obtain the accommodations which he had been at such pains to provide for his wife, and the indignation naturally excited by the declared intention of the agents to place a male passenger in the same stateroom, constitute a grievance which our natural feelings will apprise us is of the most substantial kind. Dependent upon, and, so to speak, at the mercy of, the agents and officers of the steamers, as every passenger necessarily is, it is the duty of the courts, in cases like the present, of a clear breach of contract caused either by the grossest carelessness, or by reckless cupidity, to award such damages as will be an ample indemnity for the injury sustained. It is only by the firm and constant enforcement by the courts of the rights of passengers that the repetition of abuses like the present, wherein the cupidity of subordinate agents is stimulated by an unusual number of applications for tickets, can be prevented, and the serious consequences be averted which would be likely to follow, sooner or later, attempts on the part of the officers of the ships to compel, by force, a husband and wife, who have contracted and paid for a stateroom, to receive into it a male fellow passenger. A decree for damages must be entered in the sum of twenty-five hundred dollars.