### In re HORIZON CRUISES LITIGATION.

### In re Litigation Joint Discovery M/V Horizon Legionnaires Disease.

### Celebrity Cruises Inc., and Fantasia Cruising Inc., Plaintiffs,

### v.

### Essef Corp., PAC–FAB, Inc., and Structural Europe N.V. (f/n/a SFC), Defendants.

Nos. 94 CIV. 5270(BSJ)(JCF), 94 CIV. 6147(BSJ)(JCF), 95 CIV. 0374 (BSJ)(JCF), 96 CIV. 3135(BSJ)(JCF).

United States District Court, S.D. New York.

June 5, 2000.

Steven M. Hayes, Parcher Hayes & Snyder, PC, New York, for John Silivanch, Joyce Silivanch.

Robert A. Weir, Robert A. Weir PC, Red Bank, NJ, for Sara Tofano, Michael Tofano.

Caspar F. Ewig, Hill Rivkins & Hayden LLP, New York City, William Spaar, Perdita Spaar.

John F. Keating, Gregory O'Neill, Hill, Betts & Nash LLP, New York City, for Celebrity Cruises, Inc., Fantasia Cruising, Inc.

John P. James, Friedman & James LLP, New York City, for Dorothy Cantone, Kevin Jenkins.

Richard P. O'Leary, David C. Apy, McCarter & English, Newark, NJ, Barry Perline, Leslie Perlin.

John Dooby, Harry P. Brett, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City.

John J. Hession, Dougherty, Ryan, Giuffra, Zambito & Hession, New York City, for Raymond Hague, Mary Hague.

Lester R. Hill, Slater & Hill, Melville, NY, for Vincent Viola, Mary Viola.

W.M. Serra, Irom, Wittels, Freund, Berne & Serra, Bronx, NY, for Mary Montes, Louis B. Montes.

Gary H. Levine, Cleveland, OH.

Ellen H. Greiper, Gartner, Bloom & Greiper, New York City, for Margaret Stancati, George Stancati.

Anthony F. Malanga, Jr., Gaccione, Pomaco & Beck, Belleville, NJ, for Frank Galante, Rita Galante.

Anthony Mancuso, Starkey, Kelly, Blaney & White, Toms River, NJ, for Mary Purcell.

Michael Paxton, Shea & Novy, Toms River, NJ.

Thomas G. Hermann, Squire, Sanders & Dempsey, Cleveland, OH, for Essef Corp., Pac–Fab, Inc., Structural Europe, N.V.

Anthony Bisignano, Bosco, Bisignano & Masiolo, Staten Island, NY, for Felice De Francesco, Frances De Francesco, Carol Lorenzo, Richard Lorenzo.

Michael B. Pollack, Sack, Spector & Barrett, L.L.P., West Hartford, CT, Alexander Thomas, Linda Thomas.

Howard E. Shafran, Shafran & Mosley, New York City, for John Bentzley.

Bert Bauman, Bauman & Kunkis, P.C., New York City, for William Buck, Kathleen Buck, William Buck, Jr., Kimberly Buck, Ronald Cesarski, Sima Cesarski, Michael Sckipp, Doris Sckipp.

Gregory C. Bartley, Doyle & Brady, Kearny, NJ, for Jane King, Clare Dillon.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

In July 1994, passengers on a pleasure cruise aboard the M/V Horizon contracted Legionnaires' Disease, a potentially serious or even fatal form of pneumonia, as the vessel was sailing between New York and Bermuda. Many of the victims (the "Passenger Plaintiffs") subsequently sued Celebrity Cruises, Inc. and Fantasia Cruising, Inc. (collectively, "Celebrity"), the owners and operators of the Horizon. They asserted claims of negligence, fraud, and breach of contract.

The Passenger Plaintiffs also sued Essef Corp., Pac–Fab, Inc., and Structural Europe N.V. (f/n/a SFC) (collectively referred to as "Essef" or the "Essef Defendants"), who had manufactured and distributed the filter used in the whirlpool spa system on the Horizon where the disease originated. The Passenger Plaintiffs' claims against Essef were based on negligence, strict products liability, and breach of warranty.

Celebrity, in turn, filed a complaint and cross-claims against the Essef Defendants. Celebrity sought indemnification and contribution with respect to the claims of the Passenger Plaintiffs, as well as damages based on products liability and breach of warranty claims. In addition, Celebrity has asserted fraud and negligent misrepresentation claims on the theory that the Essef Defendants falsely represented that the filter at issue met the standards of the National Sanitation Foundation.

These actions were all consolidated for discovery, and in each of them the parties subsequently consented to my presiding over all proceedings including trial pursuant to 28 U.S.C. § 636(c). One of the cases, *Silivanch v. Celebrity Cruises, Inc.*, 95 Civ. 0374(BSJ)(JCF), is currently being tried as a bellwether case, together with the claims asserted by Celebrity against Essef. The Silivanch plaintiffs included in their complaint a demand for punitive damages against both Celebrity and Essef; other Passenger Plaintiffs did not. These other plaintiffs now move pursuant to Rule 15 of the Federal Rules of Civil Procedure to amend their complaints to add claims for punitive damages. The Essef Defendants oppose these motions on the grounds that they are untimely and that punitive damages are unavailable under admiralty law. They also cross-move to strike the punitive damages claims asserted against them by the Silivanch plaintiffs and by Celebrity. Not surprisingly, Celebrity takes the position that while its demand for punitive damages against Essef is viable, the punitive damages claims of the Passenger Plaintiffs are not.

Resolution of these issues turns primarily on a twofold analysis. First, it must be determined to what extent the claims in these cases are governed by general maritime law. Then, to the degree that they are, I must decide whether punitive damages are available under that law.

*Discussion*

A. *Admiralty Jurisdiction and Maritime Law*

■ The threshold question is whether the claims at issue fall within the admiralty jurisdiction. This is significant because "[w]ith admiralty jurisdiction comes the application of substantive admiralty law." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (citation omitted); *see also Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996); *Friedman v. Cunard Line Ltd.*, 996 F.Supp. 303, 305 (S.D.N.Y.1998). With respect to any claim as to which admiralty jurisdiction is unavailable, state law would apply.[1]

In order to ascertain whether admiralty jurisdiction exists, courts previously utilized a test that focused exclusively on location.

> Determination of the question whether a tort is "maritime" and thus within the admiralty jurisdiction of the federal courts has traditionally depended upon the locality of the wrong. If the wrong occurred on navigable waters, the action is within admiralty jurisdiction; if the wrong occurred on land, it is not.

*Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 253, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). However, in response to borderline situations that the locality test did not directly address as well as in reaction to cases where that test led to anomalous results, the Supreme Court adopted the additional requirement that the tort be related to a traditional maritime activity in order for admiralty jurisdiction to apply. *Id.* at 255–61, 93 S.Ct. 493; *see also Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 673, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). As the Second Circuit characterized it, the two-pronged test required an analysis of "situs" and "status." *Keene Corp. v. United States*, 700 F.2d 836, 843 (2d Cir.1983).

Whether the status requirement applies at all to a tort occurring on the high seas has not finally been decided. In *East River Steamship*, the Supreme Court noted that this "additional requirement of a 'maritime nexus'—that the wrong must bear 'a significant relationship to traditional maritime activity' "—had been developed in the context of torts occurring on navigable waters within the United States. *East River Steamship*, 476 U.S. at 864, 106 S.Ct. 2295 (citations omitted). The Court declined to decide "whether a maritime nexus also must be established when a tort occurs on the high seas." *Id.; see also Friedman*, 996 F.Supp. at 307.

Of course, if only the locality test need be met for wrongs committed on the open ocean, then admiralty jurisdiction would apply in this case since the Passenger Plaintiffs were injured as a consequence of a disease contracted while at sea. However, even if the exercise of admiralty juris-

---

1. The Passenger Plaintiffs argue that it is the law of the case that New York law governs. It is true that I previously indicated that claims of fraud asserted against the Essef Defendants would be subject to state law. *In re Horizon Cruise Litigation*, Nos. 94 Civ. 5270, 94 Civ. 6147, 95 Civ. 374, 96 Civ. 3135, 1999 WL 436560, at *1 n. 1 (S.D.N.Y. June 24, 1999). But choice of law determinations are made on a claim-by-claim basis. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge &* *Dock Co.*, 513 U.S. 527, 548, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) (O'Connor, J., concurring). Here, the factors that militate in favor of applying state law to claims of misrepresentation in the booking of a cruise do not necessarily apply to tort claims arising out of injuries sustained during the cruise. Thus, law of the case principles do not foreclose a finding that admiralty law applies to the causes of action addressed in this motion.

diction requires that there be a substantial relationship to maritime activity in all cases, that test is met as well.

The substantial relationship requirement has been refined by two Supreme Court cases postdating *Executive Jet* and *Foremost.* First, in *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the Court held that the federal district court had admiralty jurisdiction over claims arising out of a fire caused by a washer/dryer on board a pleasure yacht when the fire spread to other vessels docked at the same marina. *Id.* at 360, 110 S.Ct. 2892. In reaching this conclusion, the Court identified two critical inquiries: whether the alleged wrong created a potential hazard to maritime commerce and whether it arose out of an activity that bears a substantial relationship to traditional maritime activity. *Id.* at 363–64, 110 S.Ct. 2892.

In the second case, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the Court found that claims arising out of the flooding of a freight tunnel were subject to admiralty jurisdiction where the flood allegedly resulted from the driving of piles into a riverbed. The Court reasoned that whether there is potential impact on maritime commerce should be analyzed "at an intermediate level of possible generality"; the appropriate inquiry is "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Id.* at 538–39, 115 S.Ct. 1043. Then, in order to determine whether there is a significant relationship to maritime activity, it is necessary to "ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539–40, 115 S.Ct. 1043.

■ In applying these tests to this case, it is clear that the claims of the Passenger Plaintiffs against Celebrity fall within the admiralty jurisdiction of the Court. As noted above, the locality test is met since the tort occurred on the high seas. This is true notwithstanding the fact that the victims did not exhibit symptoms until they had come ashore. Pursuant to the Extension of Admiralty Jurisdiction Act, 62 Stat. 496, "[t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C.App. § 740. As the Supreme Court has observed, the purpose of the Act was to invest the admiralty courts with "jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable waters, even if such injury occurred on land." *Grubart,* 513 U.S. at 532, 115 S.Ct. 1043. Thus, even if the injuries in this case "occurred" on land in the sense that the Passenger Plaintiffs were not symptomatic until they had disembarked, the injuries were plainly "caused" by a vessel on navigable waters, and so the locality test is met.

The status test is also easily satisfied with respect to the claims asserted against Celebrity. Whether there is a possible impact on maritime commerce depends upon the potential effect, not merely the particular facts of the incident. *Grubart,* 513 U.S. at 538, 115 S.Ct. 1043. In any event, the potential became reality in this case: when the disease was identified, the next cruise was cut short and more than a thousand passengers were disembarked in Bermuda and transported to New York by air so that the vessel could be decontaminated. This was a significant disruption of maritime commerce. Likewise, there is a substantial relationship between the tortfeasor's activity—Celebrity's provision of amenities to passengers on a pleasure cruise—and traditional maritime activity. As the Honorable Charles S. Haight has observed, "[o]pulent cruise ships have been part of the world's maritime tradition at

least since the launching of Cleopatra's barge." *Friedman,* 996 F.Supp. at 307. Accordingly, personal injury claims of cruise passengers have routinely been subject to admiralty jurisdiction. *Id.* at 307–08; *Johnson v. Commodore Cruise Lines, Ltd.,* No. 94 Civ. 191, 1996 WL 741606, at *1 (S.D.N.Y. Dec. 27, 1996).

■ Although somewhat less obvious, admiralty jurisdiction also applies to the claims against the Essef Defendants based on the allegedly defective whirlpool spa filter. The analyses of the locality test and of the potential effect on maritime commerce, are, of course, the same. However, relying on *Keene,* 700 F.2d at 844, the plaintiffs and Celebrity argue that because the filter was not intended specifically for maritime use, its design or manufacture does not bear a sufficiently close relation to traditional maritime activity. But *Keene* is not controlling here for two reasons. First, the decision in that case turned largely on the vagueness and generality of the allegations of the complaint. The plaintiff, a seller of asbestos products, sought indemnification and contribution from the federal government for settlements it had entered into or damages it might be required to pay in more than 14,000 personal injury and wrongful death actions. *Id.* at 838–39. In many of the underlying actions, however, the claimants had been exposed to asbestos in land-based commercial facilities where admiralty jurisdiction would not apply under any theory. *Id.* at 844.

More importantly, *Keene* predated the Supreme Court's opinion in *East River Steamship* where the Court held that there was admiralty jurisdiction over a products liability claim arising out of the malfunction of turbines manufactured for supertankers. *East River Steamship,* 476 U.S. at 863–64, 106 S.Ct. 2295. Although the turbines were apparently designed specifically for use at sea, the Court did not rely on this factor. Instead, it reasoned simply that the maritime nexus requirement was met because "these ships were engaged in maritime commerce, a primary concern of maritime law." *Id.* at 864, 106 S.Ct. 2295. Cases following *East River Steamship* have therefore largely abandoned the requirement that a purportedly defective product be "specifically designed" for maritime use. In *Sisson,* the Supreme Court made no finding that the washer/dryer at issue was specifically designed for use at sea as a predicate for its finding that admiralty law applied. *Sisson,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292. Similarly, in *Cigna Property & Casualty Insurance Co. v. Bayliner Marine Corp.,* No. 92 Civ. 7891, 1995 WL 125386, at *1, *11 (S.D.N.Y. March 22, 1995), the court asserted admiralty jurisdiction over a claim that a shipboard fire was caused by a faulty shore cord inlet—the receptacle through which electricity was provided to the vessel while it was docked. There was no suggestion, however, that the inlets themselves were uniquely maritime. *Id.* at *11. Finally, *Robinson v. United States,* 730 F.Supp. 551 (S.D.N.Y.1990), involved facts close to those in *Keene:* the plaintiff claimed damages arising out of her husband's death from exposure to asbestos while serving as an engineer aboard vessels at sea. *Id.* at 552. Judge Haight concluded that:

> The case at bar involves a tort occurring on the high seas, governed by theories of liability explicitly made a part of the general maritime law in *East River.* I conclude that *East River* precludes an asbestos manufacturer from arguing that because asbestos used on shipboard was not specifically designed for maritime use, a seaman injured by the asbestos on the high seas cannot invoke admiralty jurisdiction.

*Id.* at 556.

The same reasoning applies here. The maritime nexus requirement is met when a plaintiff alleges injury at sea resulting from a defective product, at least where that product is appurtenant to the vessel, even if it was not specifically designed for use at sea. In this case it is unnecessary

to decide whether the nexus test would be satisfied if the product were not affixed to the vessel: if, for example, passengers became ill from tainted food served on a cruise. The whirlpool spa filter was a physical part of the Horizon, and there is admiralty jurisdiction over claims that it was defective.

### B. *Punitive Damages Under Admiralty Law*

■ Although the Essef defendants, and, to some extent, Celebrity, have thus prevailed in their contention that general maritime law applies to the claims now at issue, their victory is a Pyrrhic one. That is because, contrary to the second prong of their argument, punitive damages are available in admiralty cases.[2]

The history of punitive damages in admiralty is critical to this analysis. The earliest reported case in which such damages were awarded by a court in this country is *Chamberlain v. Chandler*, 5 F. Cas. 413 (C.C.D.Mass.1823) (No. 2,575), in which passengers sued the master of a vessel for his conduct toward them on a voyage from Hawaii to Boston. Justice Story, sitting on circuit, excoriated the defendant for "malicious tyranny" and for "habitual obscenity, harsh threats, and immodest conduct" and awarded the plaintiffs $400 in damages. *Id.* at 414–15. As one scholar has noted, "[I]t is unsurprising that this earliest reported maritime award of punitive damages occurred in behalf of passengers. From very early times the common law had held that the carrier-passenger relationship entailed special sol-

icitude for passengers and required the highest degree of care from carriers." David W. Robertson, *Punitive Damages in American Maritime Law*, 28 J. Mar. L. & Com. 73, 90 n. 79 (1997) (citation omitted). Numerous other early maritime cases either granted punitive damages to passengers or at least indicated that they were available under proper circumstances. *See, e.g., McGuire v. The Golden Gate*, 16 F. Cas. 141, 142–43 (C.C.N.D.Cal. 1856) (No. 8,815) (reducing award against vessel owner holding it not responsible for assault on passengers by crew, but noting, "[i]n an action against the perpetrator of the wrong, the aggrieved party would be entitled to recover not only actual damages but exemplary,—such as would vindicate his wrongs, and teach the tort feasor the necessity of reform"); *Gallagher v. The Yankee*, 9 F. Cas. 1091, 1091, 1093 (N.D.Cal.) (No. 5,196), *aff'd*, 30 F. Cas. 781 (C.C.N.D.Cal.1859) (No. 18,124) (where vessel assisted in "banishment" of plaintiff without proper trial, court characterized conduct as "a marine tort of a very grave character" and held that "for a tort of this kind—high-handed and deliberate . . . the court should award exemplary damages"); *Morrison v. The John L. Stephens*, 17 F. Cas. 838, 839–40 (N.D.Cal.1861) (No. 9,847) (punitive damages for breach of contract where carrier sold passage to stranger in state room of plaintiff and his wife).

While punitive damages were available in cases brought by aggrieved passengers, they were not limited to such circumstances. Punitive damages could be awarded in cases brought by one vessel

---

**2.** In a report recommending approval of the settlement in a related class action, I suggested that punitive damages could not be awarded in maritime cases. (Report and Recommendation dated April 16, 1998, No 94 Civ. 5270, at 16–17). That analysis, however, took too little account of the impact of the Supreme Court's decision in *Yamaha Motor Corp.*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578, and did not address district court decisions in *Gravatt v. City of New York*, 53 F.Supp.2d 388 (S.D.N.Y.1999), and *Taylor v. Costa Cruises, Inc.*, No. 90 Civ. 2630

(S.D.N.Y. March 13, 1996), all of which will be discussed in detail below. In any event, the theoretical availability of punitive damages would not have altered the ultimate merit of the class settlement. The claims there were brought by passengers on the subsequent cruise who never became ill but whose vacations were interrupted when the Horizon was taken out of service to be decontaminated. Punitive damages, although available, would not have been warranted under those circumstances.

owner against another for collisions, *see Ralston v. The State Rights*, 20 F. Cas. 201, 209–10 (E.D.Pa.1836) (No. 11,540) (deliberate ramming of vessel by its competitor); *Smurna, Leipsic & Philad's Steamboat Co. v. Whilldin*, 4 Harr. 228, 233 (Del.Super1845) (same), in cases involving the plunder of vessels at sea, *see The Amiable Nancy*, 16 U.S. (3 Wheat.) 546, 558, 4 L.Ed. 456 (1818), in vessel-seizure cases, *see The Apollon*, 22 U.S. (9 Wheat.) 362, 374, 6 L.Ed. 111 (1824); *Gelston v. Hoyt*, 16 U.S. (3 Wheat.) 246, 325, 4 L.Ed. 381 (1818) (vindictive damages waived by concession that defendants acted without malice), and in prize cases, *see The Palmyra*, 25 U.S. (12 Wheat.) 1, 15, 6 L.Ed. 531 (1827); *La Amistad De Rues*, 18 U.S. (5 Wheat.) 385, 389, 5 L.Ed. 115 (1820). Finally, punitive damages were available to seamen who were the victims of wanton conduct. *See The Ludlow*, 280 F. 162, 163 (N.D.Fla.1922) (punitive damages denied because conduct of master not ratified by vessel owners); *Pacific Packing & Navigation Co. v. Fielding*, 136 F. 577, 580 (9th Cir.1905) (punitive damages award reversed because shipowner did not ratify tortious conduct, but court noted that juries "are often warranted in giving vindictive damages as a punishment inflicted for outrageous conduct") (internal quotation omitted).

Thus, "[a]lthough rarely imposed, punitive damages have long been recognized as an available remedy in general maritime actions where defendant's intentional or wanton and reckless conduct amounted to a conscious disregard of the rights of others." *CEH, Inc. v. F/V SEAFARER (ON 675048)*, 70 F.3d 694, 699 (1st Cir.1995) (citations omitted). "Prior to 1990, under some circumstances, courts had permitted punitive damage awards for torts committed under federal admiralty jurisdiction." *Cochran v. A/H Battery Associates*, 909 F.Supp. 911, 921 (S.D.N.Y.1995) (citing *In re Marine Sulphur Queen*, 460 F.2d 89, 105 (2d Cir.1972)).

However, in 1990 the legal seascape changed when the Supreme Court decided *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). In *Miles*, the mother of a deceased seaman sought damages under general maritime law for loss of society. *Id.* at 21, 111 S.Ct. 317. In analyzing this claim, the Court first determined that non-pecuniary relief was not authorized for the survivor of a seaman under either the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 761, or the Jones Act, 46 U.S.C. § 688. *See Miles*, 498 U.S. at 31–33, 111 S.Ct. 317. It then went on to hold that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Id.* at 32–33, 111 S.Ct. 317. The Court went on to note the value of a uniform rule for remedies for claims arising on the high seas and territorial waters and observed that it was restoring uniformity for "all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Id.* at 33, 111 S.Ct. 317.

Then in *Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, 4 F.3d 1084, 1094 (2d Cir.1993), the Second Circuit, in dicta, construed *Miles* as supporting the conclusion that punitive damages should not be allowed under the general maritime law. That case arose in the context of injury not to a Jones Act seaman, but to the operator of a pleasure craft. *Id.* at 1086. Subsequently, in *Preston v. Frantz*, 11 F.3d 357, 358 (2d Cir.1993), the Second Circuit rejected an argument that the reasoning of *Miles* was limited to Jones Act seamen and that *Wahlstrom* was therefore wrongly decided. The court stated that " 'in view of the special regard accorded by admiralty to seamen,' *Wahlstrom*, 4 F.3d at 1092, it would be anomalous to allow a nonseaman's estate to recover for future lost wages when a seaman's estate, under *Miles*, would not be entitled to such recov-

ery." *Preston,* 11 F.3d at 358. Thus, *Wahlstrom* and *Preston* suggested that once a remedy had been prescribed by Congress for seamen, two consequences followed: (1) nonseamen would no longer be entitled to relief they had previously enjoyed under general maritime law, and (2) state law remedies would not be permitted to supplement the congressionally-dictated remedies.

The reasoning of these cases was not universally endorsed. In *CEH,* 70 F.3d at 700, the First Circuit acknowledged the force of the uniformity principle enunciated in *Miles.* However, the court went on to reason as follows:

> Though these principles of uniformity defy precise limits, we think it clear that the Supreme Court had in mind the need to defer to statutory enactments addressing like issues. As the Court reasoned: "In this era, an admiralty court should look primarily to these legislative enactments for policy guidance ... [and] must be vigilant not to overstep the well-considered boundaries imposed by federal legislation." *Miles,* 498 U.S. at 27, 111 S.Ct. 317. *Miles,* therefore, does not, as defendants contend, signify a call for universal uniformity of maritime tort remedy, but rather emphasizes the importance of uniformity in the face of applicable legislation.

*Id.* Since, in *CEH,* the claim concerned the destruction of property at sea—a subject that Congress had not addressed—the court concluded that punitive damages were not barred.

If that were the end of the story, the conflict between *CEH* on one hand and *Wahlstrom* and *Preston* on the other would be easily resolved in this case: the latter cases control in this circuit. However, *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578, sheds new light on *Miles,* and, by extension, on *Wahlstrom* and *Preston.* In *Yamaha,* the parents of a child killed in a jet ski accident in territorial

waters sought damages from the jet ski manufacturer under state law. *Id.* at 201–02. However, the manufacturer, Yamaha, argued that in the interest of uniformity, general maritime law should occupy the field and oust any remedies not available in admiralty. *Id.* at 209–10, 116 S.Ct. 619. The Court rejected this contention. It noted that the principle of uniformity had arisen in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), a case which "centered on the extension of relief, not the contraction of remedies." *Yamaha,* 516 U.S. at 213, 116 S.Ct. 619. The Court then went on to cite *Miles,* 498 U.S. at 30–36, 111 S.Ct. 317, as holding that "[w]hen Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided." *Yamaha,* 516 U.S. at 215, 116 S.Ct. 619. But, observing that "Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters," *id.* (citing *Miles,* 498 U.S. at 31, 111 S.Ct. 317), the Court concluded that there was no basis for displacing state law remedies in that instance. *Id.* at 215–16, 116 S.Ct. 619.

Since *Yamaha,* courts in this district have split concerning its impact on *Wahlstrom* and the availability of punitive damages in admiralty actions. In *O'Hara v. Celebrity Cruises, Inc.,* 979 F.Supp. 254, 256 (S.D.N.Y.1997), the Honorable Jed S. Rakoff acknowledged that *Yamaha* held that "otherwise applicable state law may supplement the measure of damages available under maritime law." But he then went on to deny punitive damages to a passenger assaulted by members of a ship's crew, reasoning as follows:

> The thrust of *Yamaha* is to argue that considerations of uniformity in federal maritime wrongful death actions only require that standards of liability be exclusively determined by federal maritime law and that, once such liability has been shown, there is no antagonism to

such a policy in supplementing federal remedies with those available under otherwise applicable state law. But just such an antagonism would be created if such supplementation could include punitive damages. For, as noted, punitive damages are distinct from all other kinds of damages in that they serve, not to compensate victims, but to punish and deter malfeasors. Restatement (2d) of Torts, § 908(1) (1979). While a civil jury's prerogative to award punitive damages may have common law antecedents, it should not survive in those kinds of cases where the relevant sovereign has clearly indicated an intent not to permit civil juries in comparable cases to punish the applicable conduct with such quasi-criminal sanctions.

Here, the relevant sovereign, the United States, having constitutional jurisdiction over cases arising in navigable waters, see Article III, sec. 2, has determined, in the comparable situations arising under the Jones Act and DOHSA, that no such quasi-criminal sanctions should be imposed by a civil jury.

*Id.*

The Honorable Allen G. Schwartz reached a different conclusion in an unpublished opinion in *Taylor v. Costa Cruises, Inc.*, No. 90 Civ. 2630 (S.D.N.Y. March 13, 1996). The facts were similar to those in *O'Hara:* a passenger sought damages from a cruise line for a rape committed by a crew member. Judge Schwartz noted the precedent of *Wahlstrom*, but found that *Yamaha* was now controlling. *Yamaha* taught that unless Congress prescribed a comprehensive tort recovery scheme for a class of maritime actions, admiralty remedies could be supplemental by those available under state law. Since Congress had not legislated the rights and remedies available to passengers, Judge Schwartz concluded that state law punitive damages were not preempted.

Similarly, in *Gravatt v. City of New York*, 53 F.Supp.2d 388, 427–29 (S.D.N.Y. 1999), the Honorable Robert W. Sweet found that a dock worker could recover punitive damages in a case brought under general maritime law. He analyzed the progression from *Miles* to *Yamaha* as follows:

> In *Miles*, the Court held, inter alia, that damages recoverable in an action for the wrongful death of a seaman do not include loss of society. *See Miles*, 498 U.S. at 37, 111 S.Ct. 317. In reaching this conclusion, the Court articulated principles of uniformity relevant to wrongful death actions, and more generally, to maritime tort law, which have moved subsequent courts to limit recovery in other similar contexts. *See, e.g., CEH, Inc. v. FV Seafarer*, 148 F.R.D. 469, 472 (D.R.I.1993) (collecting cases). The Supreme Court's decision in *Miles*, however, does not enunciate an absolute bar to recovery of punitive damages in all general maritime cases. Indeed, *Miles* does not signify a case for "universal uniformity of maritime tort remedy," but rather "emphasizes the importance of uniformity in the face of applicable legislation." *CEH, Inc. v. FV Seafarer*, 70 F.3d at 700. The concern expressed in *Miles* was not with respect to nonpecuniary damages in maritime cases in general, but with inconsistency with statutory law; "[i]n this era, an admiralty court should look primarily to these legislative enactments for policy guidance ... [and] must be vigilant not to overstep the well-considered boundaries imposed by federal legislation." *Miles*, 498 U.S. at 27, 111 S.Ct. 317. As the Supreme Court later held in *Yamaha Motor Corp. U.S.A. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), "[w]hen Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is no cause for enlargement of the damages statutorily provided." 516 U.S. at 215, 116 S.Ct. 619.

*Id.* at 395. Then Judge Sweet found that nothing about the Longshore and Harbor

Workers' Compensation Act, 33 U.S.C. § 905(b), precluded an award of punitive damages in admiralty. *Id.* at 428–29.

Although it is a close question, the reasoning in *Taylor* and *Gravatt* is more persuasive than the rationale in *O'Hara*. *Miles* and *Yamaha* taken together counsel that where Congress has legislated with respect to a class of maritime cases, relief under state law as well as traditional admiralty remedies may be displaced in the interests of uniformity. However, *Yamaha* makes clear that this uniformity principle does not sweep away the common law *unless* Congress has spoken. Just as in *Yamaha*, where "Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters," 516 U.S. at 215, 116 S.Ct. 619, so in this case Congress has passed no law providing for claims by injured passengers or dictating the scope of relief they are entitled to.

To be sure, the Jones Act defines the remedies available to seamen who are injured or killed on the high seas. Those remedies are limited to pecuniary damages and do not include exemplary damages. *Miles*, 498 U.S. at 32, 111 S.Ct. 317. But in passing this legislation, Congress was expanding the relief available to maritime workers, *see Yamaha*, 516 U.S. at 213, 116 S.Ct. 619; it gave no hint that it was implicitly repealing the remedies that had traditionally been available to nonseamen.

Similarly, DOHSA provides a cause of action for the survivors of both seamen and nonseamen who are killed on the high seas. It, too, provides only for pecuniary damages and therefore precludes the award of punitive damages. *See* 46 U.S.C.App. § 762; *Horsley v. Mobil Oil Corp.*, 15 F.3d 200, 202 (1st Cir.1994). However, DOHSA was intended to be remedial: it "provided a remedy for wrongful death at sea where none had clearly existed before." *In re: Air Crash Off Long Island, New York on July 17, 1996*, 209 F.3d 200, 203 (2d Cir.2000). Initially, the drafters of the bill sought to "achieve uniformity in maritime remedies, displacing the patchwork of state statutory remedies that raised difficult choice of law issues." *Id.* at 204 (citation omitted). But in the face of objections, the drafters abandoned their attempt to craft a uniform remedy and instead submitted a new bill that " 'does not interfere with the law in force . . . . It simply covers waters that are not now covered.' " *Id.* (quoting Right of Action Death on the High Seas: Hearing Before the Committee on the Judiciary, Subcommittee No. 2, 64th Cong., 17 (1916)). In this case the waters have long been covered since, as discussed above, passengers have traditionally been able to seek punitive damages for personal injury claims. Thus, DOHSA did not displace such remedies.

These conclusions undoubtedly create anomalies. A Jones Act seaman would be denied exemplary damages that a nonseaman might receive on the basis of the same conduct. *See Adler v. Royal Cruise Line, Ltd.*, No. C 95–1304, 1996 WL 438799, at *9 (N.D.Cal. March 20, 1996). Likewise, a tortfeasor might be subject to punitive damages where the victim is injured but not where he dies. *See Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1408 (9th Cir.1994). But these anomalies are an artifact of the interaction between general maritime law and the succession of specific congressional enactments. Their existence does not justify using legislation intended to expand remedies for one set of plaintiffs as a means for contracting remedies otherwise available to a different group of plaintiffs whose circumstances have not been addressed by Congress. *Yamaha* now makes it clear that principles of uniformity do not reach so broadly. Therefore, the punitive damages claims previously pled will not be stricken.

## C. *Amendment of the Complaints*

The question remains whether the Passenger Plaintiffs who had not originally asserted claims for punitive damages may do so now.

 A motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990). Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend[,]" *John Hancock Mutual Life Insurance Co. v. Amerford International Corp.*, 22 F.3d 458, 462 (2d Cir.1994) (citation omitted), and for the proper reasons, a court may deny permission to amend in whole or in part. *See H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 112 F.R.D. 417, 419 (S.D.N.Y. 1986) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–32, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)). In discussing the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should ... be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Celebrity and the Essef Defendants argued both that the proposed amendment would be futile and that the Passenger Plaintiffs unduly delayed in seeking to add their punitive damages claims. In light of my determinations that punitive damages are available under general maritime law and that that law applies to the personal injury claims in this case, the futility argument is no longer viable.

On the other hand, the Passenger Plaintiffs who are now seeking to amend were dilatory in doing so. As they acknowledge, the principal facts on which they base their claim for punitive damages came to light in depositions in March and April 1998 and were confirmed through documents produced in June 1998. (Affidavit of John P. James dated Jan. 14, 2000 ("James Aff.") ¶¶ 14, 16). Yet it was not until a conference on December 16, 1999 that counsel raised with the Court the prospect of moving to amend the complaints. (James Aff. ¶ 25).

 Nevertheless, delay alone without some showing of bad faith or prejudice is not a sufficient basis for denying leave to amend. *See Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir.1993); *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987); *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). There has been no suggestion of bad faith here. Moreover, because of the nature of punitive damages and the format in which these cases are being tried, there can be no prejudice. The purposes of punitive damages are to punish the defendant for wanton or reckless conduct and to deter the defendant and others from engaging in similar conduct in the future. *See Smith v. Wade*, 461 U.S. 30, 50–51, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir.1996). Therefore, in theory at least, the magnitude of any punitive damage award should not vary based on the number of plaintiffs asserting a claim. In practice, the Passenger Plaintiffs here have agreed to share any punitive damage award made in the bellwether case. Thus, the defendants' maximum exposure is defined by any punitive damages recovered by the Silivanch plaintiffs who have already sought such a remedy in their complaint. Permitting the other plaintiffs to seek punitive damages will reduce the Silivanchs' share of such an award but will not increase the total. Accordingly, the defendants are not prejudiced and the Passenger Plaintiffs are entitled to amend their complaints.

### Conclusion

For the reasons set forth above, the motion of the Essef Defendants to strike

the claims for punitive damages asserted against them is denied. The Passenger Plaintiffs' motions to amend are granted, and the respective complaints are deemed amended to include claims for punitive damages.

SO ORDERED.